claims. They stood confessed. All that could properly be disposed of at Trial Term were the issues raised by the complaint and the defense thereto contained in the answer. Muldoon v. Blackwell, 84 N. Y. 646, relied on to sustain the order appealed from, is wholly inapplicable. In that case the answer was ambiguous, and it was not apparent whether or not a counterclaim was intended to be pleaded. The Court of Appeals said that, having omitted to insist upon his counterclaim in the court below, the defendant could not, for the first time, seek to avail himself of it on appeal. In the present case the defendant's claim arose before the trial of the issues, and when those issues had been tried, and the sole obstacle to an entry of judgment upon the counterclaim had been removed, he promptly moved for judgment.

Order appealed from reversed, with $10 costs and disbursements, and motion granted, with $10 costs. All concur.

---

MARSELLUS, PITT & CO. v. SIMPSON.

(Supreme Court, Appellate Division, First Department. March 24, 1911.)

1. PAWNBROKERS (§ 5*)—AGENTS—PLEDGES—VALIDITY.

Under Personal Property Law (Consol. Laws, c. 41) § 43, providing that every agent intrusted with the possession of merchandise to sell shall be deemed the true owner, so as to give validity to any contract made by him, a pawnbroker, who in good faith makes advances on jewelry delivered by a dealer to an agent to sell, is protected to the extent of the pledge made by the agent.

[Ed. Note.—For other cases, see Pawnbrokers, Cent. Dig. § 4; Dec. Dig. § 5.*]

2. FACTORS (§ 66*)—AGENTS—PLEDGES—VALIDITY.

Whether one was intrusted with the possession of merchandise to sell, within Personal Property Law (Consol. Laws, c. 41) § 43, held for the jury.

[Ed. Note.—For other cases, see Factors, Dec. Dig. § 66.*]

Appeal from Trial Term, New York County.

Action by Marsellus, Pitt & Co. against Thomas Simpson, doing business under the name and style of R. Simpson & Co. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

Charles Blandy, for appellant.
Joseph R. Swan, for respondent.

INGRAHAM, P. J. This action was brought to recover from the defendant certain personal property that had been delivered by the plaintiff to one J. Edward Boeck on memorandum. Plaintiff was a dealer in jewelry, and Boeck was also in the jewelry business. Boeck called on the plaintiff and made a selection of certain jewelry to show to a Mr. Huntoon, for sale. He selected the articles that he desired,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and they were delivered to him, he signing an instrument which recited that the goods were delivered on memorandum; that the goods were to show, and were sent to Boeck for his inspection; that they were the property of the plaintiff, and were to be returned to them on demand; and then followed a description of the articles of jewelry delivered to him. Boeck subsequently returned all but one of the articles, stating that the one he did not return Mr. Huntoon had. This was on December 11, 1906. Boeck obtained another piece of jewelry for the same purpose to show to a Mrs. Hearn. There were one diamond ring, valued at $850; two pearls, valued at $550; and a string of pearls, valued at $3,600, which Boeck received from the plaintiff and did not return. Mr. Huntoon testified that he had never instructed Boeck at any time to obtain any of this jewelry for his inspection. It was proved that it was the custom in the trade to deliver goods to persons in the trade on memorandum, and the person to whom the goods were delivered had the right to sell the goods, but was bound to bring back the goods delivered or the money, in which case the sale would be complete. Subsequently, and on the 21st day of December, Boeck pledged this ring with the defendant, and received from him the sum of $400. On the 26th of January, 1907, Boeck pledged the two pearls with the defendant, and received the sum of $175. And on the 2d day of May, 1907, Boeck pledged the necklace with the defendant, and received the sum of $1,200. Upon this testimony defendant's counsel moved to dismiss the complaint, upon the ground, among others, that these goods were delivered to Boeck with authority to sell, that the right to sell carried with it a right to pledge, and in that respect the case was governed by the factor's act. This motion was denied, and the defendant excepted, whereupon plaintiff moved for the direction of a verdict in his favor, which motion the court granted, and directed a verdict for the plaintiff, to which the defendant excepted. The defendant then asked to go to the jury upon the question as to whether Boeck had authority to sell the gems in question at the prices named in the respective memorandums. That motion was denied, and defendant excepted, whereupon the jury rendered a verdict in favor of the plaintiff, and from the judgment entered thereon the defendant appeals.

This court held, in Schmidt v. Simpson, 139 App. Div. 509, 124 N. Y. Supp. 241, that the factor's act (chapter 179 of the Laws of 1830, re-enacted in the personal property law as section 43, c. 45, of the Laws of 1909) did not apply, and therefore the defendant was not entitled to the benefit of that act. In the case of Freudenheim v. Gutter, as executor, etc. (decided February 14, 1911) 94 N. E. 640, the Court of Appeals held that the factor's act did apply, and that a pawnbroker, when acting in good faith, is protected in making advances on articles which had been intrusted by the owner to the party pledging the merchandise for sale. Applying the law as thus established, it was error to direct a verdict for the plaintiff, and there must be a new trial. It may be that in this case there is a question for the jury as to whether Boeck ever had authority to sell these goods or was intrusted with the possession of the merchandise for the purpose of sale

within the factor's act; but, if any such question was presented, it was for the jury.

It follows, therefore, that the judgment appealed from is reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.