THE SANETTE CORPORATION, Plaintiff, Respondent, *v.* SANETTE CORPORATION OF NEW ENGLAND and Others, Defendants, and MERCANTILE INTERESTS PROMOTION CORPORATION, Defendant, Appellant.

Supreme Court, Appellate Term, First Department, June 29, 1928.

**Replevin — title to goods — claim is made that merchandise was sold to defendant on memorandum that merchandise would be returned if not sold and paid for within twenty-four hours — trial court characterized transaction as " an out and out sale " or " sale on memorandum " — charge left nothing to jury to determine — new trial granted.**

This is an action in replevin. Plaintiff claims that the merchandise was sold to defendant on a memorandum after a declaration by him that in the event he did not sell the merchandise to a third party within twenty-four hours he would return the goods or pay for them. The defendant claimed the transaction was an out and out sale, but the trial court characterized it, in its charge, as " an out and out sale " or " a sale on memorandum; " and that if the first the

title passed and if the latter the title remained in the plaintiff and the defendant could not pledge them. The defendant then requested the court to charge in substance that as plaintiff had ignored the law providing for the filing of a conditional sales contract, it was precluded from recovering the goods from a *bona fide* purchaser, pledgee or mortgagee. The request was refused and due exception was taken. The refusal was error, for there was nothing at all left for the jury to determine, either as to title or larceny.

Levy, J., dissents, with memorandum.

APPEAL by defendant Mercantile Interests Promotion Corporation from a judgment of the Municipal Court, Borough of Manhattan, Third District, in favor of plaintiff and dismissing defendant's counterclaim; also from an order denying its motion to set aside the verdict of the jury and for a new trial.

*Leon Dashew*, for the appellant.

*Maurice Lefkort*, for the respondent.

BIJUR, J. This action was brought in replevin originally against the four first named defendants, but pursuant to the provisions of the Municipal Court Code (§ 68) appellant was impleaded and served a counterclaim to the effect in substance that it had made advances on the goods replevied and claimed title accordingly. The other defendants defaulted. The goods had been seized in the interest of plaintiff on a complaint which alleged that defendants Brown and Sanette Corporation " came into possession of said merchandise and wrongfully converted the same to their own use and have failed and refused to return the same or the value thereof." The affidavit recited: " That heretofore and on or about the 5th day of August, 1927, the defendant Sanette Corporation of New England and Harry H. Brown its president, appeared at the plaintiff's place of business and represented that they had a purchaser for 25 dozen Sanette Dishwashers, and an arrangement was made whereby the plaintiff delivered said 25 dozen dishwashing machines to said defendants on memorandum, upon the distinct understanding and agreement that title to said machines was to remain with the plaintiff and was not to pass to the defendants, but that the said machines, or the value thereof were to be returned or paid for by the plaintiff within 24 hours."

Plaintiff's dealings with the defendant Sanette Corporation were carried on by plaintiff's president, one Lichterman, with one Harry Brown, president of the first named defendant. Lichterman testified: " A. Mr. Brown told me he had a customer for 25 dozen machines and I says to him, ' I will make the delivery, the same as I have delivered all the merchandise.' He says, ' You can't do that ' because he told this party he has the merchandise himself and wants to make the delivery himself. So I asked him if he has

got cash for these machines, as he bought the machines before for cash.   I asked him if he had the cash and he says he did not have cash, so I did not want to give him these machines and he pleaded with me and I says, ' I will only give you the machines on memorandum, that if you deliver the machines within the next 24 hours and bring back the cash,' which he promised to do.   Then he sent a truckman up there and he took out 47 cartons of dishwashers, which is 25 dozen machines."

Plaintiff put in evidence as Exhibit 1 the following:

" 104 West 42nd Street,
" *Aug.* 4, 1927.

" 655

" Sanette Corporation of N. E,
" 337 Little Bldg.
" Boston, Mass.

" House Acct.
" Memo.
" Brown to truck.
" 25 Doz. Sanette Dishwashers 47 cartons
" $2.50                    " 625.00
" On Memorandum."

and as Exhibit 2 the following:

" Date *Aug.* 4, 1927.

" Received from
" THE SANETTE CORPORATION
" Manufacturers of
" THE SANETTE
" DISHWASHER & DRYER
" 110 West 42nd Street, New York.
" The following items in good condition:
" 25 Dozen Dishwashers — 47 Cartons,
" On Memorandum to the Sanette Corp. of N. E.
" Signed        J. C. YRLMAN."

As Brown was not produced as a witness by either party, and defendant Sanette Corporation was not represented at the trial, there was no contradiction of the circumstances or terms under and upon which respectively the goods were delivered to Brown.

When defendant, appellant, undertook to prove that it had without any notice of the relation between Brown and Lichterman made an advance in good faith upon the security of the defendant warehouse company's negotiable receipt, its evidence was excluded upon objection to such extent as to prevent it from presenting any relevant facts.   Thereupon upon motion of plaintiff's counsel the counterclaim was dismissed.

The learned judge below charged the jury that " * * * the question for you gentlemen is, was this an out-and-out sale to Mr. Brown or a sale on memorandum? If it was an out-and-out sale, if you conclude from the evidence that the sale was an ordinary sale of the goods to Brown, your verdict must be in favor of the defendant. If you believe the testimony of plaintiff's witness that these goods were sold to Mr. Brown on memorandum after a statement by him that he intended to sell them to somebody else and if he did not sell them within 24 hours he would return the goods or pay for them; if that was the transaction, it was a sale on memorandum and the goods belonged to the plaintiff until they were paid for. If they belonged to the plaintiff, this other defendant, with the same name as the plaintiff, had no right to pledge them for anything. The goods did not belong to him and did not belong to Brown. Brown had no right to transfer the goods, if it was a sale on memorandum, until he paid for them. That is the only question in this case for you."

Defendant requested the court to charge in substance that as the plaintiff " has ignored the law providing for a conditional sales contract " to be filed, etc., it is " precluded by the provisions of the Conditional Sales Law from recovering the goods from a *bona fide* purchaser, pledgee or mortgagee," which request was refused and due exception taken. In view of the form of the charge, this exception I think presents for review the whole series of errors resulting in the verdict and judgment appealed from. It will be observed that the learned trial justice characterized the transaction either as " an out-and-out sale " or a " sale on memorandum." If it was the former, of course the defendant was entitled to prevail, and the same result would be reached if it was a *sale* on memorandum, because on a *sale* the title would either pass or not pass, and in the latter case it would have been a conditional sale as defined in sections 61 and 62 of the Personal Property Law (added by Laws of 1922, chap. 642), the contract for which had not been filed as provided in section 66. Since the testimony of the plaintiff was uncontradicted and both the conversation which he related and the bill which he testified he forwarded to Brown stated that the transaction was one " on memorandum " there was nothing at all left for the jury to determine. As there must be a new trial, it may be well to point out the issues which are involved.

The phrase " on memorandum " in connection with the consignment or sale of goods is subject to much misunderstanding. It is assumed by many to have a definite meaning. The fact is that the memorandum itself must determine its significance. (*Matter of Schindler*, 158 Fed. 458; *Sturm* v. *Boker*, 150 U. S. 312,

329; *Ginsberg* v. *Martin*, 122 Misc. 468; *Jacob* v. *Haefelien*, 54 App. Div. 570.) In this State there have been a number of decisions which speak of a " custom " in the jewelry trade of delivering goods for inspection and possible sale to a customer of the party receiving them, with the obligation to return the goods or their proceeds as the case may be. In the first place this custom, if any, is confined, so far as the reports indicate, to the jewelry trade, and in the next place the " memorandum " itself contained the terms specified. (*Marsellus, Pitt & Co.* v. *Simpson*, 143 App. Div. 383; *People* v. *Weber*, 130 id. 593.) In *Weyman* v. *People* (4 Hun, 511; affd., on opinion below, 62 N. Y. 623) it is spoken of as " a memorandum order." Assuming, however, for the sake of argument, that the mere use by plaintiff of the words " on memorandum " compelled an interpretation that the goods were not sold to Brown conditionally, but that they were merely placed with him as bailee or agent with power of sale, the plaintiff would be in no better position because of the provisions of the Personal Property Law (§ 43, as amd. by Laws of 1915, chap. 273) known as the " Factors Act." (*Marsellus, Pitt & Co.* v. *Simpson, supra; Freudenheim* v. *Gütter*, 201 N. Y. 94.) The reasoning of the Court of Appeals in the last named case that the Legislature has recognized the equitable principle of placing the risk on the one who reposes the chief confidence is rendered more pointed in the instant case by the fact that the plaintiff, according to his own testimony, deliberately co-operated with Brown to give the latter the appearance and all the indicia of ownership. On this appeal respondent has cited *Soltau* v. *Gerdau* (119 N. Y. 380) in support of a belated claim that Brown was guilty of common-law larceny and consequently was incapable of passing any title to appellant. In that case, however, the intermediate party pretended to act as a broker and delivered a bought and sold note to plaintiff vendor, the vendee being purely fictitious. He then secured *possession* of the goods on the plea that he would deliver them to the vendee, but as a matter of fact converted them to his own use, an act which the court designated as common-law larceny. There never was the slightest pretense on his part, nor any intention on the part of the vendor, that the dishonest broker should have any title. Common-law larceny, frequently spoken of as " larceny by trick and device," refers merely to dishonest obtaining of *possession* and not of title. (*Weyman* v. *People, supra.*) It is to say the least exceedingly doubtful whether there is any evidence in the instant case which would permit the jury to draw the inference that at the time Brown obtained possession of these goods he intended to steal them. If he obtained them honestly and in the interval

formed the intent of converting them or their proceeds by pledging them, the act would not be common-law larceny, and defendant would be entitled to a verdict. Many of the cases which discuss this distinction relate to criminal convictions, but they are clearly relevant on this point. (*People* v. *Hazard*, 28 App. Div. 304; *People* v. *Ehrlich*, 190 id. 302; *People* v. *Scharf*, 217 N. Y. 204; *People* v. *Weber*, *supra*.) It is unnecessary perhaps to point out that the rights of plaintiff as against Brown are not involved.

To sum up on this branch of the case, it is clear that no issue either as to title or larceny was left to the jury for its determination, or even suggested at the trial. The judgment must, therefore, be reversed and a new trial ordered, with thirty dollars costs to appellant to abide the event.

Lydon, J., concurs.

Levy, J. (dissenting). I dissent. Unfortunately the cause was tried below upon a false theory, and the court's charge was equally erroneous, but no proper exception in this connection was noted. However, I feel that the situation here falls clearly within the decision of the Court of Appeals in *Soltau* v. *Gerdau* (119 N. Y. 380) and the doctrine there enunciated is all controlling. Hence, I vote to affirm.