OPINION OF THE COURT
Stephen Smyk, J.
The above-named defendants have moved to dismiss their respective indictments, which accuse them of the crime of scheme to defraud in the first degree in violation of section 190.65 of the Penal Law, on the grounds that the conduct alleged in each indictment is not included within the area of conduct proscribed by section 190.65 of the Penal Law.
Essentially, each indictment accuses the particular defendant of obtaining property from more than 10 persons by engaging in a “bad check scheme constituting a systematic ongoing course of conduct” with the intent to defraud and obtain property by “false and fraudulent pretenses, representations and promises.” Subdivision 1 of section 190.65 of the Penal Law states: “A person is guilty of a scheme to defraud in the first degree when he (a) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or *330 promises, and (b) so obtains property from one or more of such persons.”
The defendants argue that the language and history of this scheme to defraud statute preclude its application to situations where, as here, a person issues a series of bad checks. The defendants contend that sections 190.60 and 190.65 of the Penal Law were designed to penalize consumer fraud schemes whereby property is obtained by false or fraudulent pretenses, representations or promises when the intent is to defraud more than one person (Penal Law, § 190.60) or more than 10 persons (Penal Law, § 190.65), and that issuing a bad check is not a “false or fraudulent pretense, representation or promise” within the meaning given to those words in subdivision 2 of section 155.05 of the Penal Law. The defendants rely heavily upon the distinctions set forth in subdivision 2 of section 155.05, describing the ways in which larceny may be committed, and argue that the Legislature has distinguished issuing a bad check (Penal Law, § 155.05, subd 2, par [c]) from obtaining property by false promise (Penal Law, § 155.05, subd 2, par [d]) so that allowing the prosecution of a bad check as a scheme to defraud will obliterate the distinctions made in subdivision 2 of section 155.05 and render paragraph (c) meaningless.
Although the three reported cases (People v Lasek, 94 Misc 2d 1007; People v Ford, 103 Misc 2d 249; People v Block & Kleaver, 103 Misc 2d 758) dealing with prosecutions under the scheme to defraud statute deal with fraudulent schemes not involving the issuance of bad checks, they do provide some guidance in determining whether the issuing of a series of bad checks may properly be prosecuted as a scheme to defraud. In People v Ford (supra, p 252), the court indicated that, like the Federal mail fraud statute, the New York scheme to defraud statute makes the nefarious character of the scheme rather than the dollar loss the essence of the crime (citing Givens, Additional Commentary, McKinney’s Cons Laws of NY, Book 39, 1979-1980 Pocket Part, Penal Law, § 190.60, pp 79-80). The presence of fraud rather than larceny is the essential characteristic emphasized by the statute.
*331 The importance of this distinction between fraud and larceny to the legislative scheme is shown by the structure of the Penal Law. Section 155.05, upon which the defendants rely, is contained in title J, entitled “Offenses Involving Theft”. Section 190.65 is contained in title K, entitled “Offenses Involving Fraud”. Within title K, article 190 deals with “Other Frauds” and it is within this article that both the issuance of a bad check and the scheme to defraud are described (sections 190.05 and 190.65). Thus, the Legislature treats both offenses as offenses characterized by fraud. Issuing a bad check becomes a larceny under section 155.05 when one obtains property by means of issuing the bad check (Penal Law, § 155.05, subd 2, par [c]). Similarly, a scheme to defraud, as described in section 190.65, would alsq be a larceny by false promise under section 155.05 (subd 2, par [d]) because property is received by means of a false promise pursuant to a scheme to defraud. (See People v Block & Kleaver, 103 Misc 2d 758, 764, supra.)
Therefore, under the legislative scheme of the Penal Law, the same conduct may constitute a fraud offense under title K and a larceny offense under title J if property is actually obtained by means of the fraud. This duplication exists whether the fraud is perpetrated by issuing a bad check, false advertising or criminal impersonation (see, e.g., People v Block & Kleaver, supra; People v Lasek, 94 Misc 2d 1007, supra). Furthermore, this duplication is one of necessity rather than one which we may choose to avoid as the defendants have asked. The occurrence of conduct constituting a fraud offense is a necessary element of a scheme to defraud. For example, in People v Lasek (supra), the court was presented with this duplication of offenses in a motion to dismiss on double jeopardy grounds. In that case, the defendants were first prosecuted for criminal impersonation and petit larceny. A subsequent prosecution for scheme to defraud based upon the same conduct was held to be barred by the first prosecution. The court held that the particular fraudulent conduct, criminal impersonation, was a necessary element of the offense of scheme to defraud and could be prosecuted either as 10 offenses of *332 criminal impersonation and 10 offenses of petit larceny or as 1 offense of scheme to defraud. However, because these alternatives are “equivalent”, the prosecution for one barred the subsequent prosecution for the other (supra, p 1009).
Given the categories of offenses described in the Penal Law and the case law dealing with the nature of a scheme to defraud, it is entirely consistent for the issuing of a series of bad checks, a fraud offense, to constitute the fraudulent conduct which is necessary to commit the crime of scheme to defraud. The scheme to defraud statute proscribes fraudulent conduct used as part of a scheme to obtain property. Clearly, issuing bad checks is fraudulent conduct within the scope of the statute.
This conclusion does not render subdivision 2 of section 155.05 meaningless or superfluous because the purpose of section 155.05 is to identify the ways in which larceny may be committed. Rather than attempting to distinguish issuing a bad check from a false promise, this section attempts to clarify all the ways conduct may constitute a larceny without requiring a prosecutor to force a particular case into one of the common-law forms of theft. (See Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 155.05, pp 113-115.)
The conclusion that the scheme to defraud statute may be applied to the issuing of bad checks is also supported by three other features of our law.
First, the case law and commentary indicates that obtaining property by issuing a bad check is also larceny by false or fraudulent promises, representations or pretenses. (E.g., Lesser v People, 12 Hun 668, affd 73 NY 78; People v Miller, 29 AD2d 921; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 155.05, p 114.) Thus, issuing a bad check is a fraudulent pretense which may provide the crucial fraud element of a scheme to defraud.
Second, this conclusion is consistent with the purpose of the scheme to defraud statute. One purpose for adding a provision which encompasses conduct penalized by ex *333 isting larceny provisions of the Penal Law is to make scheming to defraud a felony even though the value of the property received is insufficient to constitute a grand larceny. The scheme to defraud statute is not limited to consumer frauds (Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, 1979-1980 Pocket Part, Penal Law, § 190.65, p 83), but also facilitates the prosecution of one who issues a series of bad checks as a felony fraud offense where the property received would not support a prosecution for grand larceny. Thus, this legislative purpose has meaning where the fraudulent conduct was the issuing of a bad check. (See memorandum of Assemblyman S. Fink, NY Legis Ann, 1976, p 35.)
Third, Federal case law supports the inclusion of bad check schemes within a scheme to defraud statute. The New York scheme to defraud statute is derived from the Federal mail fraud statute (US Code, tit 18, § 1341) and uses very similar language. (Givens, Additional Commentary, McKinney’s Cons Laws of NY, Book 39, 1979-1980 Pocket Part, Penal Law, § 190.60, pp 79-81.) The cases under the Federal mail fraud statute were used to help understand the New York statute in People v Block & Kleaver (103 Misc 2d 758, supra). A review of the Federal cases reveals that the Federal statute has been used frequently to prosecute so-called “check-kiting” schemes in situations which would have also supported prosecutions for bad check offenses under State law. (See, e.g., Federman v United States, 36 F2d 441; Falconi v Federal Deposit Ins. Corp. 257 F2d 287; United States v Cooper, 596 F2d 327.)
Therefore, we conclude that the language, history and statutory setting of the New York scheme to defraud statute is entirely consistent with the application of that statute to the issuing of a series of bad checks where property is received pursuant to a scheme to defraud. The bad checks are the fraudulent instrumentality by which the property is received and they are not qualitatively distinguishable from the criminal impersonation or false advertising that provided the fraudulent instrumentality in the reported cases. We find that the conduct *334 alleged in each of the above-cited indictments is within the scope of the fraudulent conduct proscribed by section 190.65 of the Penal Law.
Accordingly, the defendants’ motions are denied.