MINPECO, S.A., Plaintiff,

v.

CONTICOMMODITY SERVICES, INC., ContiCapital Management, Inc., Conti-Capital Limited, Norton Waltuch, Nelson Bunker Hunt, Lamar Hunt, William Herbert Hunt, International Metals Investment Co., Ltd., Sheik Mohammed Aboud Al-Amoudi, Sheik Ali Bin Mussalem, Naji Robert Nahas, Gilian Financial, ACLI International Commodity Services, Inc., Banque Populaire Suisse, Advicorp Advisory and Financial Corporation, S.A., Mahmoud Fustok, Faisal Bin Abdullah, Merrill Lynch, Pierce, Fenner & Smith, Inc., Bache Halsey Stuart Shields, Inc., E.F. Hutton & Company, Inc., Commodity Exchange, Inc., and the Board of Trade of the City of Chicago, Defendants.

No. 81 Civ. 7619(MEL).

United States District Court,
S.D. New York.

March 21, 1983.

Cole & Corette, P.C., Washington, D.C., for plaintiff; Theodore Sonde, John E. Corette, III, D. McCarty Thornton, Deborah M. House, Susan Bierman, Washington, D.C., Grand & Ostrow, Paul R. Grand, New York City, of counsel.

Cahill, Gordon & Reindel, New York City, for defendant E.F. Hutton & Company, Inc.; Thomas Curnin, Thoms J. Kavaler, Alan B. Loughnan, Ruth D. MacNaughton, Edward R. Wiest, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Conti-Commodity Services, Inc., ContiCapital Management, Inc., ContiCapital Ltd. and Norton Waltuch; Richard Rosen, Mark H. Alcott, Diane Englander, Peter W. Schneider, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendant Bache Halsey Stuart Shields, Inc.; Richard H. Klapper, Marvin Schwartz, Nadine Strossen, New York City, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, Arnold & Porter, New York City, for defendant Mahmoud Fustok; Eliot Lauer, Herbert Stoller, Lorraine C. Parker, New York City, Alex Bennett, Washington, D.C., of counsel.

Gilbert, Segall & Young, New York City, for defendant Banque Populaire Suisse.

Townley & Updike, New York City, and Kirkland & Ellis, Chicago, Ill., for defendant The Chicago Board of Trade; James K. Leader, James E. Tyrell, Holly S. Stein, New York City, John Stassen, John E. Angle, Frederick L. White, Scott E. Early, T. Webster Brenner, Chicago, Ill., of counsel.

Rogers & Wells, New York City, for defendants Merrill Lynch, Pierce, Fenner & Smith, Inc., ACLI Intern. Commodity Services, Inc.; Guy C. Quinlan, William R. Glendon, Susan A. Garcia, New York City, of counsel.

Hughes-Hubbard & Reed, New York City, and Shank, Irwin, Contant, Williamson & Grevelle, Dallas, Tex., for defendants Nelson Bunker Hunt, William Herbert Hunt and Lamar Hunt; Powell Pierpoint, George A. Davidson, Susan L. Thorner, Margaret G. King, New York City, Roger Goldburg, Dallas, Tex., of counsel.

Baer, Marks & Upham, New York City, for defendant Commodity Exchange, Inc.; Barry Mandel, Mark A. Buckstein, Stephen F. Selig, Eugene R. Scheiman, Thomas E. Albright, William A. Brandt, Jr., Joshua B. Parker, New York City, of counsel.

Perito, Duerk, Carlson & Pinco, P.C., Washington, D.C., for defendant Intern. Metals Inv. Co., Ltd.; Paul L. Perito, John P. Wintrol, Washington, D.C., of counsel.

LASKER, District Judge.

The background facts of this case are reviewed at 552 F.Supp. 332 (S.D.N.Y.1982), familiarity with which is assumed. Defendants move pursuant to Fed.R.Civ.Pr. 12(b)(6) to dismiss the ninth claim which alleges that the acts of the defendants

> "constitute a pattern ... of racketeering activity, to wit, two or more acts, within ten years, of unlawful use of the United States Postal Service mail system and wire communications in interstate or foreign commerce to defraud plaintiff ..."

in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO").[1] (Complaint ¶ 304).

RICO, part of the Organized Crime Control Act of 1970, provides for treble damages, costs and attorneys fees in the case of any person injured by a "pattern of racketeering activity," which is defined as the commission, within a period of ten years, of two acts of any of the crimes (one of which is mail fraud) enumerated in § 1961(1).

The major question presented on the instant motion is whether a civil RICO com-

---

1. The motion is joined in by all defendants except the Board of Trade of the City of Chicago and the Commodity Exchange, Inc., against whom plaintiff makes no RICO claims.

plaint must allege that the defendants are linked to organized crime.[2] Defendants contend that such an allegation is a necessary element of a civil RICO complaint. Minpeco does not allege that defendants are linked to organized crime; it contends that such allegation is not required.

The question is not an easy one. Many courts and commentators have considered it, and differing conclusions have been drawn. *See Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982); *Hellenic Lines, Ltd. v. O'Hearn,* 523 F.Supp. 244 (S.D.N.Y.1981); Note *Civil RICO: The Temptation and Impropriety of Judicial Restriction,* 95 Harv.L. Rev. 1101 (1982).

We have carefully considered the statute, the legislative history cited by the parties and the various judicial interpretations of RICO. While serious arguments are made on both sides, we find most compelling the rationale recently expressed by Judge Pollack in *Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347 at 1361 (S.D.N.Y.1983):

"[T]here is nothing in the legislative history to suggest that Congress intended to create a private right of action for treble damages for violations of substantive statutes by ordinary business or parties. For example, it was clearly established at the time that RICO was enacted that there was no private right of action for violations of the mail fraud statute. It is implausible that Congress could have meant to alter this accepted rule to the extent of creating a right of action for treble damages without a single mention of such a revolutionary consequence anywhere in the legislative history."

*See also Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736, 747 (N.D.Ill. 1981) ("There is simply no hint in the congressional proceedings that the Act was viewed as an alternative, and cumulative, remedy for private plaintiffs alleging . . . fraud").

It is an established rule of statutory construction that the courts will not impute to Congress "a radical departure from established law in the absence of express congressional command." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). The assertion that Congress would have, without comment or explanation, altered the statutes prohibiting mail fraud, as well as the many other statutes which could be used as predicates to RICO allegations, to provide not only for a private right of action, but also for treble damages, costs and attorneys fees, strains credibility.

Moreover, the legislative history adds strong support to defendants' contention that control of organized crime was the *raison d'etre* of RICO. In *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the Supreme Court analyzed the legislative history of RICO, concluding that

"[I]t was the declared purpose of Congress 'to seek the eradication of organized crime in the United States' . . . The various Titles of the Act provide the tools through which this goal is to be accomplished."

*Id.* at 589, 101 S.Ct. at 2531–32, citing the preface to the statute at 84 Stat. 923.

In addition, the *Turkette* Court set forth the statement of Congressional findings which prefaces the Act, which refers to one, and only one, problem: organized crime. *See also Turkette* at 589 n. 11, 101 S.Ct. at 2531 n. 11, citing the statements of Senators Yarborough and Scott and Representatives Rodino and Mayne, discussing the role of the act in eradicating organized crime; *id.* at 592 & n. 14, 101 S.Ct. at 2533 & n. 14, citing similar remarks by Senators Hruska and Byrd and the Department of Justice comments to the Hearings on Organized Crime Control before the House Committee on the Judiciary, 91st Cong., 2d Sess., 170 (1970); *United States v. Ivic,* 700 F.2d 51, at 62 (2d Cir.1983) ("RICO was the culmina-

---

**2.** In view of our decision on the necessity of an allegation of a link with organized crime, it is unnecessary to consider the other contentions raised by defendants; e.g., the requisite nature

of injury "by reason of" a RICO violation under § 1964(c) and the relationship between an "enterprise" under § 1961(4) and a "pattern of racketeering" under § 1962(c).

tion of some two decades of Congressional concern about the infiltration of legitimate businesses by organized crime"); *Barr v. WUI/TAS, Inc.,* 66 F.R.D. 109, 113 & n. 2 (S.D.N.Y.1975).

In sum, we concur with the conclusion of the Ninth Circuit:

"We believe that anyone who reads the legislative history must be struck by the singlemindedness with which Congress drafted RICO. Congress declared over and over again that its purpose was to rid legitimate organizations of the influence of organized crime. This purpose must be the linchpin of any construction of RICO."

*United States v. Marubeni American Corp.,* 611 F.2d 763, 769 n. 11 (9th Cir.1980).

In response to the nearly overwhelming legislative history, Minpeco relies on the fact that Congress considered and rejected a provision that would have specifically criminalized membership in organizations such as the Mafia or La Cosa Nostra. However, the fact that Congress rejected such a proposal in the criminal context indicates, at most, a Congressional recognition of the constitutional requirement that criminal statutes be precisely drawn. Moreover,

"Legislative failure to establish a 'bright line' does not imply that Congress intended that Courts repudiate their proper function of legislative interpretation and application. The Courts are routinely called on to apply general criteria on a case by case basis."

*Moss, supra,* at 1359.

In conclusion, we join with several other courts which have considered the question in holding that a complaint under the civil provisions of RICO must allege a link between the defendants and organized crime. It is unnecessary to attempt at this point to specify a definition of organized crime. Minpeco has not alleged any link between the defendants and organized crime, by any definition.

Accordingly, the motion to dismiss the ninth claim is granted.

It is so ordered.