Zane, Rudofsky & Hynes, New York City, for defendants; James P. Zane, Edward S. Rudofsky, Jay L.T. Breakstone, Frederick A. Polatsek, New York City, of counsel.

**CONGREGATION BETH YITZHOK and Congregation Beth David Chasidei Skole, Inc., both New York religious corporations, Plaintiffs,**

v.

**Pinkas BRISKMAN, Eliezer Rabinowitz (a/k/a Leo H. Rabinowitz), and Meier Rabinowitz, Defendants.**

**No. 82 CIV 2066.**

United States District Court, E.D. New York.

June 6, 1983.

## ORDER

McLAUGHLIN, District Judge.

## INTRODUCTION

By this civil action under the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"), 84 Stat. 941 *et seq.*, 18 U.S.C. §§ 1961–1968, plaintiffs, two Chassidic corporations, seek an injunction, an accounting, damages, and attorney's fees. Federal jurisdiction is premised on §§ 1964(a) & (c) of Title 18, and on 28 U.S.C. § 1331. Plaintiffs also allege that this Court has pendent jurisdiction over two New York statutory causes of action.

Defendants have moved to dismiss the action, pursuant to Rule 12(b), Fed.R.Civ.P., on a number of grounds: (1) lack of subject matter jurisdiction; (2) nonjusticiability; (3) lack of authorization for plaintiffs to commence this suit; and (4) lack of the requisite specificity and particularity in pleading.

## THE PARTIES

Plaintiff Congregation Beth Yitzhok ("Beth Yitzhok") is a religious corporation, duly organized under New York State law. Members of the Congregation are adherents of the Chassidic sect of Judaism. Plaintiff Congregation Beth David Chasidei Skole ("Beth David") is another religious corpora-

tion properly organized under New York law. Beth David is a cemetery membership association, whose members need not belong to Beth Yitzhok.

The three defendants are Eliezer and Meier Rabinowitz, who are brothers, and Pinkas Briskman, who is their brother-in-law.

## BACKGROUND

The religious leader of this particular enclave of Chassidism, which was established in the mid-1700's in Southeastern Poland, is called the "Skolyer Rebbe." In 1920, Rabbi David Yitzhok Eizek Rabinowitz became the Skolyer Rebbe, and he and his followers emigrated to the United States in 1939. They founded Beth David in 1940 and Beth Yitzhok in 1944.

The wellspring of this litigation was the death of Rabbi Rabinowitz on February 3, 1979. The Skolyer Rebbe had three sons: the two defendants, Eliezer and Meier Rabinowitz; and a third brother, Baruch Pinkas Rabinowitz, who is not a party. Plaintiffs claim that each son was offered, but declined, succession to the position of Skolyer Rebbe. Therefore, say the plaintiffs, the title passed to Rabbi Rabinowitz' eldest grandson, Rabbi Avrohom Moshe Rabinowitz, son of Baruch Pinkas Rabinowitz.

## INCIDENTS GIVING RISE TO THIS LITIGATION

Plaintiffs assert that, upon the death of Eizek Rabinowitz, defendants began to engage in the unlawful conduct that constitutes the substance of this action. Defendants are charged with: remaining in possession of, and converting to their own use, the property of the Skolyer Rebbe; opening a "bogus" bank account in a name similar to that used by plaintiff Beth Yitzhok; embezzling money from plaintiffs' bank accounts, and redepositing that money in the "bogus" account; seizing plaintiffs' mailing lists and then soliciting donations, purportedly on behalf of the Skolyer Rebbe; seizing telephone lists of Beth Yitzhok for the purpose of soliciting contributions; and seizing control of Beth David. Also asserted, as pendent state claims, are violations of Section 5 of the New York Religious Corporation Law (prohibiting diversion of funds from religious corporations), and of Section 133 of the New York General Business Law (prohibiting the use of a name or address with intent to deceive).

Defendants do not appear to dispute plaintiffs' assertion that the three sons of the Skolyer Rebbe declined to accept the mantle of leadership. Defendants, however, vigorously contest plaintiffs' assertion that the unwillingness of the Skolyer Rebbe's sons to serve caused the position to devolve upon the grandson, Avrohom Moshe.

According to defendants, Avrohom Moshe was never "properly selected" as the new Skolyer Rebbe (Defendants' Reply Memorandum in Support of the Revised Motion for Dismissal at 13) because the children of the Skolyer Rebbe, who are "responsible for . . . selecting a successor . . . who is acceptable to the family," (*id.* at 12) never agreed to the selection of Avrohom Moshe. Further, defendants state that, as children of the late Skolyer Rebbe, they are entitled to "settle . . . his affairs, [and] oversee . . . his Congregation . . . ." *Id.*

Defendants conclude that, because the allegations in the complaint rest on the false premise that the defendants are not entitled to remain in control of the Congregation, this action must be dismissed. Plaintiffs counter by asserting that, irrespective of the succession issue, defendants have engaged in acts constituting violations of the RICO statute.

## DISCUSSION

### I. RICO CLAIMS

Because federal subject matter jurisdiction in this case is predicated solely upon violation of the RICO statute, the initial question is whether this case falls under that statute. Defendants state that jurisdiction is improper under RICO because plaintiffs do not allege a link between defendants and organized crime. Plaintiffs concede that no such allegation is made, but

contend that RICO's coverage is not restricted to organized crime.

Neither the Supreme Court nor the Second Circuit has yet reached the troublesome issue whether RICO applies when there is no allegation that a defendant is tied to organized crime.[1] Cases are legion holding that a RICO claim need not allege that defendant is a member of organized crime.[2] Nevertheless, a line must be drawn somewhere, lest every garden variety dispute become a matter of federal concern. *See Minpeco S.A. v. Conticommodity Services,* 558 F.Supp. 1348 (S.D.N.Y.1983) (Lasker, J.); *Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347 (S.D.N.Y.1983) (Pollack, J.). No matter how expansive a view of RICO jurisdiction one is inclined to take, this case should fall beyond the pale. After all, it must be recalled that the statute was designed to "rid the American economy and the channels of interstate commerce from the influences of organized crime." *United States v. Vignola,* 464 F.Supp. 1091, 1095 (E.D.Pa.1979), *aff'd,* 605 F.2d 1199 (3d Cir. 1972). *See Minpeco S.A., supra.*

The core of this litigation is an internecine dispute between rival religious factions. If there can be a case that should not be covered by the RICO statute, this is it. Nevertheless, I need not decide this motion upon so shallow a foundation as statutory construction. There is a more serious problem.

1. Plaintiffs cite the recent Supreme Court case of *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), in support of its argument that RICO reaches beyond organized crime. *Turkette,* however, decided only whether the statute was intended to apply to illegitimate, as well as legitimate, enterprises. Although language in *Turkette* may be read to suggest that the statute is not restricted to organized crime, the opinion makes constant reference to the Congressional concern with organized crime. Accordingly, *Turkette* does not resolve this issue.

2. *See, e.g., United States v. Campanale,* 518 F.2d 352, 363–64 (9th Cir.1975), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976); *Meineke Discount Muffler Shops, Inc. v. Patsy Noto and Jopat Auto Center, Inc.,* 548 F.Supp. 352 (E.D.N.Y.1982); *Hellenic Lines Ltd. v. O'Hearn,* 523 F.Supp. 244, 247–248 (S.D.

## II. JUSTICIABILITY

Defendants argue that judicial consideration of this controversy is precluded by the First Amendment's proscription against excessive entanglement between Church and state. Plaintiffs counter by asserting that this case may be decided by reference to "neutral principles of law."

Analysis of this issue must begin with *Jones v. Wolf,* 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), where the Supreme Court observed that while the civil courts have general authority to resolve disputes between rival religious factions, that authority is cabined by the First Amendment, which "prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice." *Id.* at 602, 99 S.Ct. at 3024. Hence, "consideration of doctrinal matters, whether the ritual and liturgy or worship or the tenets of faith," is precluded by the First Amendment. *Id., citing Maryland & Virginia Churches v. Sharpsburg Church,* 396 U.S. 367, 90 S.Ct. 499, 24 L.Ed.2d 582 (1970) (Brennan, J., concurring). *See also Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 710, 96 S.Ct. 2372, 2381, 49 L.Ed.2d 151 (1976) (where resolution of religious disputes affected control of church property and the structure and administration of the Diocese, matter was "for ecclesiastical and not civil tribunals.").

N.Y.1981); *Engl v. Berg,* 511 F.Supp. 1146, 1155 (E.D.Pa.1981); *Parnes v. Heinhold Commodities,* 487 F.Supp. 645, 646 (N.D.Ill.1980); *United States v. Gibson,* 486 F.Supp. 1230, 1240–41 (S.D.Ohio 1980); *United States v. Chovanec,* 467 F.Supp. 41, 44–45 (S.D.N.Y.1979); *United States v. Vignola,* 464 F.Supp. 1091, 1096 (E.D.Pa.), *aff'd,* 605 F.2d 1199 (3d Cir. 1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980); *United States v. Mandel,* 415 F.Supp. 997, 1018–19 (D.Md.1976). *See also* Note, *Civil RICO,* 95 Harv.L.Rev. 1101, 1106–1109 (1982); Blakely & Gettings, *Racketeer Influenced and Corrupt Organizations (RICO): Basic Concepts—Criminal and Civil Remedies,* 53 Temple L.Q. 1009, 1040–1043 (1980); and Seiling, *Standing Rules and the RICO Treble Damage Action,* 1 *Materials On RICO,* 533–73 (R. Blakely ed. 1980).

In this case, plaintiffs urge the Court to resolve the controversy by reference to "neutral principles of law," under which the court "relies exclusively on objective, well-established concepts of . . . law familiar to lawyers and judges." *Jones v. Wolf,* 443 U.S. at 604, 99 S.Ct. at 3026. The complaint, they note, alleges acts that are "*criminal* and otherwise *fraudulent* and actionable." (Plaintiffs' Reply Memorandum of Points and Authorities at 5 (emphasis in original)) Defendants, they argue, are simply not entitled to "loot corporate bank accounts, launder money through bogus accounts, indiscriminately draw checks to their own order, [and] perpetuate . . . mail frauds." *Id.* at 8 (emphasis deleted). They further state that the existence of a religious dispute is not corroborated by any affidavit or document.

Defendants respond that plaintiffs' argument begs the question: it presumes that no dispute exists as to who is entitled to succeed the late Skolyer Rebbe. Because there is such a dispute, defendants argue, it is impossible for this Court to resolve the controversy without first wading deeply (and impermissibly) into religious issues. I agree. In cases involving a dispute between two or more religious factions, the Court must look beyond the allegations of the complaint to ascertain what lies at "the heart of [the] controversy." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church,* 344 U.S. 94, 122, 73 S.Ct. 143, 157, 97 L.Ed. 120 (1952) (Frankfurter, J., concurring). Such an examination in this case leads ineluctably to the conclusion that resolution of the allegations in the complaint first demands that I determine the proper succession to the post of Skolyer Rebbe. As tempting as that invitation may be, it does not appear to be the proper role of a federal court.

Defendants contend that the Skolyer Rebbe exercises "complete, unquestioned and final" authority over all aspects of the affairs of his Congregation. (Defendants' Reply Memorandum in Support of the Re-

vised Motion for Dismissal at 34) Under this view, defendants, who never accepted Avrohom Moshe Rabinowitz as the new Skolyer Rebbe, were entitled to manage plaintiffs' affairs as they saw fit. This Court is not in a position to ascertain whether defendants' understanding of the Skolyer Rebbe's prerogatives reflects applicable religious law. It is therefore apparent that an issue of religious doctrine must be decided before it can be determined whether the defendants' acts were wrongful. The first RICO claim, for example, alleges misuse and conversion of Congregational funds. But if applicable religious law authorized defendants to expend those funds, the claim must fail. Resolution of the other allegations in the complaint would require similar, judicially proscribed, determinations of religious tenets.[3]

Accordingly, this action must be dismissed for want of justiciability. The dismissal, however, is without prejudice to plaintiffs' right to bring an action arising out of the same incidents after the religious issues in this case have been resolved by the appropriate religious tribunal.

SO ORDERED.

---

**3.** I also note that defendants' argument that the resolution of this dispute requires determinations of Jewish law has been supported by an expert in the field. Affidavit of Rabbi J. David Bleich, para. 2.