**BETH ISRAEL MEDICAL CENTER, Bronx-Lebanon Hospital Center, Jewish Hospital and Medical Center of Brooklyn, Joint Diseases North General Hospital, Hospital for Joint Diseases Orthopaedic Institute, Long Island Jewish-Hillside Medical Center, Maimonides Medical Center, Montefiore Hospital and Medical Center, The Mount Sinai Hospital, Albert Einstein College of Medicine of Yeshiva University, Beach YM & YWHA, Boro Park YM & YWHA, Brookdale Village Housing Corporation, Israel Senior Citizen Housing Corporation, Jewish Association for Services for the Aged, Jewish Board of Family and Children Services, Metropolitan Jewish Geriatric Center and FOJP Service Corporation, Plaintiffs,**

v.

**Charles E. SMITH, Melvin Block, Mark Kressner, Irving Mandell, George Schlossman, Michael Schulman, and John Does 1 Through 100, Defendants.**

No. 82 Civ. 7191 (MEL).

United States District Court, S.D. New York.

Dec. 8, 1983.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiffs; Arthur L. Liman, Steven E. Landers, Gerard E. Harper, Michael G. Carey, Martin Klotz, New York City, of counsel.

Gerald L. Shargel, New York City, for defendant Charles Smith.

Penzer & Sloan, New York City, for defendant Mark Kressner; Carl R. Sloan, New York City, of counsel.

La Rossa, Axenfeld & Mitchell, New York City, for defendant George Schlossman; John W. Mitchell, New York City, of counsel.

Schulman & Levitt, P.C., Garden City, N.Y., for defendant Michael Schulman; Steven L. Levitt, Garden City, N.Y., of counsel.

LASKER, District Judge.

## I.

In this action seeking treble damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"),[1] and alleging pendent state law claims, defendants Charles Smith, George Schlossman, Mark Kressner and Michael Schulman move to dismiss the complaint or portions of it on various grounds, most importantly for failure of the RICO allegations to state a claim upon which relief can be granted. The allegations of the complaint are accepted as true for the purposes of these motions. It asserts that the defendants engaged in a scheme by which the chief legal officer responsible for handling legal claims against a large group of nonprofit institutions in New York City sold confidential legal information about those claims to various attorneys and that the

---

1. 18 U.S.C. § 1961 *et seq.* (1976 & Supp. III 1979).

attorneys used the information in representing claimants in litigation against the institutions. The particulars of the complaint are as follows.

FOJP Service Corporation ("FOJP") is a not-for-profit corporation established by the Federation of Jewish Philanthropies of New York ("Federation") to investigate incidents of potential medical malpractice or personal injury involving the teaching hospitals and other public service institutions (together, the "charities") that make up the Federation, and to direct the defense or settlement of lawsuits brought against the charities. In carrying out its duties FOJP gathers information as to potential or actual legal claims which includes the opinions and conclusions of physicians, hospital personnel and trial counsel about the facts of the cases, the legal strategies to be pursued in defending the claims, and the potential settlement value of the claims.

Between October 1979 and June 1981, the defendant Charles Smith acted as Director of Legal Claims Services for FOJP. As Director, Smith was responsible for oversight of the legal services FOJP provided for the charities, and had full access to the information gathered and maintained by FOJP in carrying out its function. Beginning immediately after he was hired, Smith began selling this information to lawyers engaged in representing plaintiffs in medical malpractice and personal injury suits. The said information included copies of the actual files maintained by FOJP on the actual or potential claims of hundreds of patients of the plaintiff hospitals, which were used by the attorneys who purchased them to solicit clients to bring suit against the charities, and to prosecute their claims. Besides providing copies of files, Smith directly advised the attorneys about defense strategies and settlement estimates in the cases that led to the filing of a lawsuit. Smith received thousands of dollars from attorneys as a result of these activities at the very time he served as FOJP's Director of Legal Claims Services. Among the attorneys who bought information from Smith were Schlossman, Kressner, and Schulman, along with the two other named

defendants (who are not movants herein) and an unknown number of other attorneys who are named as John Does in the complaint.

As a result of a complaint by a patient solicited to file a lawsuit against one of the plaintiff hospitals, Smith was arrested and, along with Schlossman, Kressner, Schulman, and Irving Mandell, was indicted by a state grand jury. Smith ultimately pled guilty to Commercial Bribe Receiving in the First Degree, Schlossman to Commercial Bribery in the First Degree, and the others to unlawful solicitation of business on behalf of an attorney.

The present suit was filed October 29, 1982, seeking treble damages under the civil RICO provisions. As predicate RICO acts the complaint alleges violations of the federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343 (1976), and of a state-law criminal fraud provision, New York Penal Law ("N.Y.P.L.") § 190.65 (McKinney, Supp.1982–83). The complaint also alleges pendent state-law claims of common law fraud, breach of fiduciary duty, breach of contract, tortious interference with contract and business relations, commercial bribery and bribe receiving, and violation of Section 487 of the New York Judiciary Law.

RICO's substantive prohibitions state, in relevant part:

"(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

18 U.S.C. § 1962(b)–(d) (1976). In support of their motions to dismiss the RICO claim (the complaint's first cause of action) movants argue that the allegations of predicate RICO violations do not constitute a "pattern of racketeering activity" within the meaning of the statute, that the complaint does not adequately allege either the existence of a statutory "enterprise" or the requisite connection between the enterprise and the alleged racketeering activity, and that the alleged injury suffered by plaintiffs is not an injury "by reason of" a violation of the racketeering statute. As further grounds for dismissal of various portions of the complaint movants contend that the federal mail and wire fraud and common-law fraud allegations (set forth in the first and second causes of action) are not pleaded with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure, ("F.R.Civ.Pr.") that the common-law fraud allegations (second cause of action) fail to state a cause of action because no affirmative misrepresentations are alleged, and that the commercial bribery claim (ninth cause of action) is barred by the statute of limitations. Finally, in the event the complaint is not dismissed, movants seek permission not to answer the factual allegations of the complaint on Fifth Amendment grounds, and move to strike paragraphs 1, 2, and 3 of the complaint as scandalous and prejudicial.

## II. The RICO Allegations

### A. Pattern of Racketeering Activity

Movants argue that the complaint's allegations of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 (1976) and of state-law criminal fraud, N.Y.P.L. § 190.65 (McKinney, Supp.1982–1983), do not adequately allege a "pattern of racketeering activity" as defined under RICO. 18 U.S.C. § 1961(5) (1976). A "racketeering activity" consists of any act which is indictable under specified provisions of federal law, including the mail and wire fraud statutes, or any act involving specified state-law crimes, including acts involving bribery, which is punishable by imprisonment for more than one year.[2] A "pattern of racketeering activity" consists of the commission of two or more such acts within ten years of each other.[3]

Movants contend that, because the complaint's charges of mail and wire fraud arise out of a common nucleus of facts, they comprise only one predicate act under RICO and cannot be considered separate acts comprising a pattern of racketeering activity. They further argue that N.Y.P.L. § 190.65 is not among the state-law offenses which can constitute predicate RICO acts. They claim that § 190.65 is not a crime involving bribery, but instead simply a crime of fraud,[4] and that the allegations that defendants' violation of § 190.65 was accompanied by an act of bribery does not

---

**2.** "Racketeering activity" is defined in 18 U.S.C. § 1961(1) (1976 & Supp. III 1979), which states in relevant part:

"(1) 'Racketeering activity' means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud), section 1343 (relating to wire fraud)...."

**3.** "Pattern of racketeering activity" is defined in 18 U.S.C. § 1961(5) (1976), which states in relevant part:

"(5) 'pattern of racketeering activity' requires at least two acts of racketeering activity, one

of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."

**4.** N.Y.P.L. § 190.65 (McKinney, Supp.1982–83) provides, in relevant part:

"1. A person is guilty of a scheme to defraud in the first degree when he (a) engages in a scheme constituting a systemic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and (b) so obtains property from one or more of such persons."

bring the charge within the scope of RICO. They also argue that the fraud alleged in the complaint is not the type of fraud to which § 190.65 applies. For these reasons, according to defendants, the complaint alleges only one valid predicate RICO act, and hence does not allege a pattern of racketeering activity within the meaning of the statute.

### 1. The Mail & Wire Fraud Charges

■ Movants' contention that separate acts of mail and wire fraud arising out of a common nucleus of facts cannot be considered separate predicate RICO acts is without merit. This contention has been specifically rejected by the Courts of Appeals of at least two Circuits,[5] for reasons which are clear. First, the plain language of the statute refers to "any act which is indictable" under the mail or wire fraud statutes, without a qualification that each act must occur in a different factual situation. Second, it would contradict the requirement of a "pattern of racketeering activity" to hold that the acts making up the pattern must take place in unconnected factual circumstances. It follows that the instant complaint, by alleging violations of both the mail and wire fraud statutes, ade-

quately alleges the two predicate RICO acts required to establish a pattern of racketeering activity.

### 2. N.Y.P.L. § 190.65

■ Movants argue that the type of fraud alleged in the complaint is not the type of fraud proscribed by N.Y.P.L. § 190.65. They contend that section 190.65 is directed at consumer fraud involving affirmative misrepresentations of fact, and is not intended to apply to a scheme such as that at issue here.

Judicial interpretations of section 190.65 are sparse, and it is true that most of them involve consumer fraud perpetrated through false advertising or false promises.[6] Nonetheless, at least one case has applied the provision outside of that context, concluding that "the Scheme to Defraud statute is not limited to consumer frauds" People v. Lennon, 107 Misc.2d 329, 333, 434 N.Y.S.2d 95, 98 (Broome Cty. Ct.1980) (prosecution for bad check writing scheme).[7] Moreover, as several New York cases have observed,[8] § 190.65 is modelled on the federal mail fraud statute, which clearly encompasses a wide variety of fraudulent practices beyond the area of

5. See United States v. Phillips, 664 F.2d 971, 1038–39 (5th Cir.1981); United States v. Weatherspoon, 581 F.2d 595, 601–02 (7th Cir.1978). Although it did not address the question at issue here, the Second Circuit's decision in United States v. Huber, 603 F.2d 387 (2d Cir.1979), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980), also casts doubt upon the proposition that separate illegal acts in furtherance of one scheme to defraud cannot constitute a pattern of racketeering activity. In Huber, defendants operated hospital supply businesses which together were deemed one "enterprise" by the Court; the defendants were indicted inter alia for their scheme to bill fraudulently inflated prices to their customers. In discussing the government's burden with respect to the RICO counts the Court noted that "the government had to show that appellant had committed at least two acts of mail fraud within ten years of one another in the conduct of the affairs of an enterprise in interstate commerce with which he was associated." Id. at 393. No reservations were expressed as to the fact that the acts of mail fraud occurred in connection with one scheme. See also United States v. Chovanec, 467 F.Supp. 41, 44 (S.D.N.Y.1979) (Pierce, J.) (indict-

ment charging six incidents of wire fraud in connection with one scheme to defraud adequately alleges a pattern of racketeering activity).

6. See People v. Ford, 88 A.D.2d 859, 451 N.Y.S.2d 753 (1st Dept.1982); People v. Jones, 117 Misc.2d 647, 458 N.Y.S.2d 874 (New York Cty.Ct.1983); People v. Block & Kleaver, Inc., 103 Misc.2d 758, 427 N.Y.S.2d 133 (Monroe Cty.Ct.1980); People v. Lasek, 94 Misc.2d 1007, 405 N.Y.S.2d 991 (Jefferson Cty.Ct.1978).

7. See also Givens, Additional Commentary to N.Y.P.L. § 190.60 (McKinney, Supp.1982–83), p. 129: "[t]he sections are, on the other hand, equally not limited to consumer fraud cases. In referring to the intended victim as 'persons,' the statutes contain no limitation to natural persons. Frauds against business, governmental, philanthropic or other 'persons' are consequently covered as well" (emphasis original).

8. E.g., People v. Ford, supra, 88 A.D.2d at 861, 451 N.Y.S.2d at 756; People v. Lennon, supra, 107 Misc.2d at 330, 333, 434 N.Y.S.2d at 96, 98.

consumer fraud.[9] The allegations of the instant complaint—the defendants' selling and buying of confidential legal information, the use of such information in lawsuits against the unwitting victim of the scheme, and the concealment of the scheme—require no imaginative reading to be characterized as fraud. Accordingly, while we do not preclude the possibility that further development of New York law on the subject may warrant reexamination of the complaint's allegations under § 190.-65 at a later date, dismissal of these allegations does not presently appear to be warranted.

■ Movants also attack the use of § 190.65 as a predicate RICO offense on the ground that fraud is not included in the list of state-law offenses constituting a racketeering act. They argue that the fact that bribery is alleged to have occurred in the course of the violation of § 190.65 does not convert that offense into an "act ... involving ... bribery" within the meaning of 18 U.S.C. § 1961(1)(A) (1976 & Supp. III 1979). According to movants, the statute refers to "act[s] ... involving ... bribery" (rather than to "bribery" only) to assure that violations of state statutes not specifically using the word "bribery" would be potential predicate RICO offenses as long as the offense falls into the generic category of bribery.[10]

Of course, in light of our holding that the federal mail and wire fraud allegations of the complaint sufficiently allege at least two predicate RICO acts, plaintiffs' RICO claim does not depend upon the adequacy of their allegations as to N.Y.P.L. § 190.65. Nonetheless, in our view movants' argument should be rejected. While movants' interpretation of the statute is not fanciful, we find more persuasive the argument that a state-law offense in which bribery is alleged to have played a major role, and which is punishable by more than a year's

imprisonment, is an "act ... involving ... bribery" which may serve as a predicate RICO offense. The literal language of the statute supports this conclusion, and movants have cited nothing in the legislative history demonstrating that their more narrow interpretation of the statute is correct. Accordingly, the allegations concerning N.Y.P.L. § 190.65 do not appear to be legally insufficient on the grounds asserted by movants.

## B. *Enterprise*

■ To state a cause of action under civil RICO a complaint must allege that the pattern of racketeering activity was carried on in connection with the affairs of an "enterprise," which is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (1976). Movants, echoing an argument that has repeatedly been the subject of litigation in RICO lawsuits and prosecutions, contend that the instant complaint is deficient because it does not adequately allege the existence of an "enterprise" which is separate and distinct from the acts which are alleged to constitute the "pattern of racketeering activity." Plaintiffs argue that the fraudulent scheme allegedly carried out by the defendants was itself an "enterprise" within the meaning of the racketeering statute, and that an overlap between the facts establishing the enterprise and those establishing the pattern of racketeering activity is not fatal to the adequacy of their enterprise allegations.

In *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the Supreme Court elucidated the relationship between the enterprise and pattern-of-racketeering-activity elements of RICO:

"The enterprise is an entity, for present purposes a group of persons associated

---

9. *E.g., United States v. Barta,* 635 F.2d 999 (2d Cir.1980) (breach of employee's duty to render honest and faithful services to employer, combined with failure to disclose to employer information material to the conduct of the employ-er's business is violation of federal mail fraud statute).

10. *See United States v. Forsythe,* 560 F.2d 1127, 1137 (3rd Cir.1977).

together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."

*Id.* at 583, 101 S.Ct. at 2528–29 (citation and footnote omitted). Relying on the Supreme Court's statement that proof of the two elements may coalesce, the Second Circuit has approved RICO prosecutions and civil suits in which the sole function of the "enterprise" was to carry out illegal racketeering activities, as long as there was also proof that the individuals involved in the enterprise shared a common purpose and functioned as a continuing unit. Indeed, in *Moss v. Morgan Stanley, Inc., et al.,* 719 F.2d 5 (2d Cir.1983), the Court specifically rejected the argument that the enterprise must have an " 'independent economic significance from the pattern of racketeering activity,' " *id.,* at 22, *quoting* district court decision at 553 F.Supp. 1347, 1363 (S.D.N.Y.1983). The civil RICO cause of action in *Moss* was based upon the defendants' alleged use of confidential information to purchase stock in a company which was the target of an impending tender offer. Although the enterprise was

alleged to consist only of the scheme to carry out the illegal predicate RICO acts—violations of the federal securities laws—the Court held that the enterprise element of RICO was satisfied by allegations that the securities fraud violations had continued over a period of time.[11]

In the case at hand, the complaint alleges that the defendants' fraudulent scheme to purchase and sell confidential legal information continued for a period of 18 months. It is alleged that each of the defendants was associated at least with Smith for the common purpose of buying and selling the information. Accordingly, the complaint adequately alleges an enterprise as the Second Circuit has interpreted that element of RICO.[12]

### C. *Link Between Enterprise and Pattern of Racketeering Activity*

In light of our holding that the defendants' alleged association for the purpose of carrying out their fraudulent scheme adequately pleads the enterprise element of RICO, there is no merit to defendants' argument that no link between the enterprise and the pattern of racketeering activity has been alleged as required by 18 U.S.C. § 1962 (1976). Section 1962 prohibits 1) the acquisition or maintenance of any direct or indirect "interest in or control of" any enterprise through a pattern of racketeering activity (§ 1962(b)); 2) the direct or indirect participation, by anyone employed by or associated with the enterprise, in the conduct of the enterprise's affairs through a pattern of racketeering activity (§ 1962(c)); and 3) conspiring to violate any of the above provisions of section 1962 (§ 1962(d)). To give rise to a violation of section 1962 the enterprise in question

---

**11.** *See also United States v. Mazzei,* 700 F.2d 85 (2d Cir.1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983) ("enterprise" consisted of bettors and Boston College basketball players who conspired to shave points during 1978–79 basketball season; "pattern of racketeering activity" consisted of carrying out the scheme in nine separate games).

**12.** In light of this holding we need not reach the issue whether the allegations concerning each defendant's involvement in the affairs of the individual charities is sufficient to make out a claim that each charity was an "enterprise" conducted through a pattern of racketeering activity by each defendant.

must be engaged in, or its activities must affect, interstate or foreign commerce.[13]

Clearly, if the illegal scheme allegedly carried out by the defendants is an enterprise, as we have held above, the complaint adequately alleges violations of all three of the provisions described above, a proposition which movants do not dispute. Movants' argument that the complaint is inadequate in this regard is based upon the theory that only the plaintiff charities, and not the defendants' illegal venture itself, can be considered "enterprises," and that the complaint does not allege the requisite connection between the defendants' activities and the charities to support the claim that section 1962 was violated. This theory is of doubtful validity, since Smith's alleged racketeering activities in connection with his employment by FOJP clearly fall within the scope of subsections (b) and (c),[14] and the other defendants are alleged to have conspired with Smith in carrying out those activities, a violation of subsection (d). However, we need not address this question because, as has been noted, the defendants' alleged illegal scheme does constitute an enterprise within the meaning of the statute.

■ Movants also argue that the complaint is defective because it does not allege specific facts showing that the criminal enterprise in which the defendants purportedly participated affected interstate commerce. The case law makes clear, however, that the interstate commerce element of RICO is interpreted very broadly. *See, e.g., United States v. Barton,* 647 F.2d 224 (2d Cir.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981) (criminal enterprise affected interstate commerce where defendants bombed a car which was insured by an interstate insurance carrier). The complaint alleges, albeit without specifying details, that the activities of the defendants' illegal enterprise and the activities of the plaintiff charities affected interstate commerce. The Court can take judicial notice of the fact that health care institutions such as the plaintiff hospitals receive payments from the Federal government and from interstate insurers, and purchase supplies and equipment in interstate commerce. Requiring the filing of an amended complaint to recite such facts would be a sterile exercise, and in any event defendants are free to renew their motion to dismiss upon a fuller record if the development of facts in discovery should somehow cast doubt on the interstate commerce element of the complaint.

**D.** *Injury By Reason of a Violation of the Racketeering Statute*

■ The civil remedy for treble damages under RICO is available to "any person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (1976). Movants argue, citing numerous cases, that the injury contemplated by section 1964(c) is an injury due to "organized crime," or at least an injury resulting from something more than the commission of the predicate acts of racketeering.[15] As to whether a complaint under civil RICO must allege that the defendants are linked to organized crime, that question has now been resolved in the negative in this Circuit by the Court of Appeals' decision in *Moss v. Morgan Stanley, supra,* which concluded that the language and legislative history of the RICO statute do not support the requirement of

---

**13.** The provisions of 18 U.S.C. § 1962(b)–(d) are quoted in full *supra* at pp. 1064–65.

**14.** *See generally United States v. Jacobson,* 691 F.2d 110, 112–13 (2d Cir.1982) (subsection (b)); *United States v. Scotto,* 641 F.2d 47, 54–55 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981) (subsection (c)).

**15.** *E.g., Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449 (7th Cir.1982), *cert. denied,* —— U.S.

——, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982); *Minpeco, S.A. v. Conticommodity Services, Inc.,* 558 F.Supp. 1348 (S.D.N.Y.1983); *Moss v. Morgan Stanley, Inc.,* 553 F.Supp. 1347 (S.D.N.Y.1983), *aff'd on other grounds,* 719 F.2d 5 (2d Cir.1983); *Harper v. New Japan Securities Int'l, Inc.,* 545 F.Supp. 1002 (C.D.Cal.1982); *Van Schaick v. Church of Scientology,* 535 F.Supp. 1125 (D.Mass.1982).

an organized crime element in civil RICO claims.[16]

The decision in *Moss*, however, distinguished the question whether a link to organized crime must be alleged from the question whether some injury beyond that attributable simply to the predicate racketeering acts must be alleged, and did not reach the latter question.[17] The courts that have required such an allegation have analogized the treble damage provision of 18 U.S.C. § 1964(c) to the treble damage provision of section 4 of the Clayton Act, 15 U.S.C. § 15 (1976), which the Supreme Court has interpreted as requiring proof of

> " '*antitrust* injury,' which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977) (emphasis original). One court which has relied upon this analogy has described the required "racketeering enterprise injury" as "a commercial injury caused by the conducting of an 'enterprise's affairs through a pattern of racketeering activity.' "[18] Other courts have simply stated that a civil RICO action cannot be maintained by "persons whose only injury stems directly from the predicate acts alone."[19]

We need not decide whether a civil RICO plaintiff must allege a "racketeering enterprise injury" resulting from something more than the predicate racketeering acts, because even if such a standard is applicable it is satisfied by the instant complaint. The injury alleged to have been suffered by the plaintiffs as a result of the defendants' scheme is pervasive, ongoing, and debilitating to the conduct of plaintiffs' legal af-

fairs and their operations as a whole. The plaintiffs' injuries are not confined to specific monetary losses resulting from discrete acts of mail and wire fraud, but include the necessity of investigating the extent to which current and past legal claims have been infected by the defendants' conspiracy, taking legal steps to address the conspiracy's effects, and implementing security procedures.[20] The effects of the illegal scheme are continuing; as the complaint states:

> "On information and belief, many cases are pending in which the other defendants received stolen confidential information from Smith. These include both cases which pre-dated the conspiracy and now-pending cases which would not have been brought but for the conspiracy. Plaintiffs are informed and believe that all or some of the defendants have engaged in and continue to engage in an active effort to conceal the full nature and scope of the conspiracy and the identities of other conspiring attorneys."

Paragraph 22. The illegal conspiracy as described in the complaint will plainly have reverberating consequences for the integrity of plaintiffs' operations, beyond those attributable to the specific alleged predicate RICO acts. Thus, we find no deficiency in plaintiffs' allegations of injury even under the more restrictive interpretation of injury urged by defendants.

### III. *Particularity in Fraud Allegations*

■ Movants contend that the complaint's allegations of federal mail and wire fraud (first cause of action) and state common-law fraud (second cause of action) are conclusory and fail to meet the requirement of F.R.Civ.Pr. 9(b) that fraud be

**16.** 719 F.2d at 21.

**17.** 719 F.2d at 20 n. 16.

**18.** *Johnsen v. Rogers,* 551 F.Supp. 281, 285 (C.D. Cal.1982), *quoting* 18 U.S.C. § 1962(c); *see also Bankers Trust Co. v. Feldesman,* 566 F.Supp. 1235, 1241 (S.D.N.Y.1983). *Cf. Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co.,* 527 F.Supp. 206, 209 (E.D.Mich.1981) ("A 'rack-

eteering enterprise injury' might occur, for example, if a civil RICO defendant's ability to harm the plaintiff is enhanced by the infusion of money from a pattern of racketeering activity into the enterprise").

**19.** *Harper v. New Japan Securities Int'l., Inc., supra,* 545 F.Supp. at 1007.

**20.** Complaint, ¶ 32(a).

pleaded with particularity. This contention is belied by the detailed allegations in ¶¶ 11–22 of the complaint specifying the nature and operation of the scheme in which the defendants are alleged to have participated. The complaint describes the fiduciary duty owed by Smith to plaintiffs by virtue of his employment by FOJP, the methods by which Smith and the other defendants took advantage of Smith's position, the manner in which the defendants benefited from the scheme, and even, as to Smith, Block, Kressner, Schulman, and Schlossman, exact dates and amounts of many of the alleged payments. By these allegations, plaintiffs have certainly "put [themselves] on record as to what the alleged fraud consists of specifically," and thus have satisfied the requirements of F.R.Civ.Pr. 9(b). *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972), *quoting* 1A W. Barron & A. Holtzoff, Federal Practice and Procedure, § 302, at 215–16 (Wright rev. 1960).

Movants also contend that the federal mail and wire fraud claims are inadequately pleaded because the complaint states only that the mail and wire fraud statutes were violated in the course of the conspiracy, without specifying the dates or contents of specific mailings or telephone calls. In view of the complaint's detailed description of the defendants' scheme, however, the failure to describe particular letters or telephone calls is not fatal to the complaint. Under *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), any doubts as to the inferences that can reasonably be drawn from the complaint's allegations must be resolved in favor of the plaintiff. In light of the complaint's allegations, it is certainly reasonable to infer that mail and/or telephone communications were used in furtherance of the defendants' scheme, and in any event the defendants are entitled to move for appropriate relief if the development of the facts bears out their contention that the scheme was carried out without the use of such communications.

### IV. *Requirement of Affirmative Misrepresentation*

Movants argue that the complaint states no claim for relief under principles of common-law fraud because the complaint does not allege that the defendants made affirmative misrepresentations of fact to the plaintiffs. However, such an allegation is unnecessary in the present circumstances. Plaintiffs were entitled to assume, in conducting their legal affairs, that opposing attorneys had no access to confidential information such as plaintiffs' own estimates of the strengths, weaknesses, and settlement values of their cases. Indeed, Smith's employment contract contained an express representation that he would maintain the confidentiality of information obtained in the course of his employment.[21] The concealment of Smith's collusion with the plaintiffs' adversaries constitutes the kind of nondisclosure actionable as fraud under both of the standards described in *Frigitemp Corp. v. Financial Dynamics Fund*, 524 F.2d 275, 283 (2d Cir.1975):

> "A common law claim for fraud and deceit based on a mere failure to disclose must show either that there was a fiduciary relationship between the parties, see *Wood v. Amory*, 105 N.Y. 278, 281–82, 11 N.E. 636, 637 (1887), or at least that the defendant knew that the plaintiff was acting under a mistaken belief with respect to a material fact. See *Donovan v. Aeolian Co.*, 270 N.Y. 267, 271, 200 N.E. 815, 816 (1936)."

The complaint adequately alleges the existence of a fiduciary relationship between Smith and the plaintiffs, and certainly the fact of Smith's collusion with the other defendants was unknown to FOJP and would have been material to plaintiffs in the litigation and settlement of legal claims prosecuted by the various defendants. Moreover, even if, in the first place, only Smith's conduct were actionable as fraud (because of his fiduciary relationship with plaintiffs), the other defendants' conspiracy with Smith in furtherance of the fraud

---

**21.** *Complaint*, ¶ 12.

would be actionable. *See Vom Lehn v. Astor Art Galleries, Ltd.*, 86 Misc.2d 1, 380 N.Y.S.2d 532, 538 (Sup.Ct.N.Y.Cty.1976). Thus, there is no basis for dismissal of plaintiffs' common-law fraud claim.

### V. *The Commercial Bribery Claim*

The ninth cause of action asserts a civil claim for damages based upon defendants' alleged commission of the offense of commercial bribery.[22] Schlossman contends that no civil cause of action for commercial bribery is recognized in New York law, and that if such a cause of action is recognized the claim is time-barred.

The only case cited in support of Schlossman's contention that commercial bribery is not civilly actionable is *Mairs v. Baltimore and Ohio Railroad Co.*, 175 N.Y. 409, 410, 413–14, 67 N.E. 901 (1903), which states:

> "Where the legislature prohibits or requires the doing of an act and prescribes a punishment that shall be inflicted for a violation of its mandate, the punishment furnishes the exclusive remedy for the wrong, so far as the public is concerned, and the act cannot be made the basis for a civil action by an individual for the recovery of damages *unless* he has been injured in his person or property and the damages suffered are the direct and proximate result of the illegal act."

(emphasis supplied). Because the complaint alleges direct injury to plaintiffs as a result of the defendants' bribery of Smith, the cited case appears to bolster rather than cast doubt upon the validity of plaintiffs' commercial bribery claim. Nonetheless, we note that plaintiffs have not answered Schlossman's argument that no civil cause of action for commercial bribery exists, and our research has not discovered any such civil case. Under these circumstances, we believe it advisable to reserve decision on this aspect of defendants' motion pending fuller briefing by the parties.

22. N.Y.P.L., Article 180.

23. The motion to strike the complaint's introductory material as scandalous and prejudicial is denied. Such a motion may be granted only

### VI. *Fifth Amendment Claim*

 The defendants have moved for permission not to answer the factual allegations of the complaint in the event their motions to dismiss are denied. This request is based upon their assertion that being required to answer the complaint would infringe upon their Fifth Amendment privilege against self-incrimination. The defendants, of course, are entitled to assert their Fifth Amendment privilege in their answer. It is equally plain, however, that an answer must be filed and a decision made whether and to what extent the defendants wish to assert the privilege. Therefore, to the extent that defendants seek a ruling that no responsive pleading be filed, the motion is denied. This denial leaves defendant free to assert their Fifth Amendment privilege, in their answers, as to any matter which they believe in good faith is covered by that privilege.[23]

For the foregoing reasons, the motions to dismiss are denied in all respects, with the exception that decision is reserved pending fuller briefing by the parties, as to the motion to dismiss the ninth cause of action.

It is so ordered.

where the material is entirely unrelated to the matter in controversy. *See Mitchell v. Hart,* 41 F.R.D. 138, 143 (S.D.N.Y.1966).