# COURT OF APPEALS,

## Feb. 4, 1916.

## THE PEOPLE v. WILLIAM SCHARF.

### (217 N. Y. 204.)

LARCENY *—WHEN TAKING GOODS FOR EXAMINATION AND SELECTION BEFORE PURCHASE CONSTITUTES BAILMENT AND NOT A PURCHASE—WHEN APPROPRIATION OF SUCH GOODS BY PERSON SO TAKING THEM CONSTITUTES THE CRIME OF GRAND LARCENY.

Upon the trial of a defendant convicted of the crime of grand larceny for obtaining and appropriating property of complainant, the evidence established without contradiction that the defendant asked complainant, a dealer in jewelry, to sell him a pair of diamond earrings; that he did acts and made statements causing complainant to regard him as worthy of credit; that he received from complainant two pairs for the purpose of appraising, or testing, and enabling him to select one of them, upon the condition that he would return them to complainant on the day following; that he did not so return them; that complainant and his wife sought frequently to secure the return of the earrings and that defendant pawned them. In the meantime, defendant sent to complainant notes made by himself and indorsed by his wife. No part of the notes was paid and those which complainant had transferred were returned to him and all of them were produced by him at the trial. Complainant and defendant had no other business transactions, and complainant testified that the notes were given to him as security. There is no other evidence relating to the purpose for which the notes were sent to or received by complainant. *Held,* that under the evidence the trial court was correct in submitting the case to the jury to determine whether the transaction was a sale or whether defendant secured possession of the goods as a bailee and in charging that, if the defendant was a bailee and appropriated the goods to his own use, with felonious intent, he was guilty of the crime of grand larceny. *Held, further,* that the court was correct in refusing to charge that there was evidence from which the jury might find that there was an arrangement in the inception of the transaction that com-

---

* See Note, Vol. 28, p. 180.

plainant was to accept defendant's notes in payment of the earrings. People v. Scharf, 168 App. Div. 494, reversed.

(Argued January 20, 1916; decided February 4, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered July 30, 1915, which reversed a judgment of the Kings County Court rendered upon a verdict convicting the defendant of the crime of grand larceny in the first degree.

The facts, so far as material, are stated in the opinion.

*James C. Cropsey, District Attorney* (*Harry G. Anderson* and *Ralph E. Hemstreet* of counsel), for appellant.

The requests to charge were properly denied. (Lawson v. Met. S. R. R. Co., 40 App. Div. 307; Moett v. People, 85 N. Y. 373; Walker v. People, 88 N. Y. 81; People v. Mills, 98 N. Y. 176; People v. McCallam, 103 N. Y. 587; People v. Harris, 136 N. Y. 423; People v. Zachello, 168 N. Y. 35; People v. Tobin, 176 N. Y. 278; People v. Boggiano, 179 N. Y. 267; People v. Katz, 209 N. Y. 311.)

*Samuel Widder* for respondent.

The transaction had between the complainant and the defendant constituted a sale and the question of bailor and bailee had no application in the case at bar. The learned trial judge fell into error upon the law of the case. (Siegel v. Union Assur. Society, 90 Misc. Rep. 550; People v. Cruger, 102 N. Y. 510; Smith v. Clews, 105 N. Y. 283.) An error in law as to direction of the trial court is reversible error. The court should have charged as requested by the attorney for the defendant. (Stokes v. People, 53 N. Y. 164; People v. Walker, 198 N. Y. 329.)

COLLIN, J.:

The Appellate Division reversed the judgment upon two exceptions of the defendant to refusals of the trial judge to charge as defendant requested.

The cardinal facts are: The defendant on April 2, 1914, went to the place of business of one Spievack, a dealer in jewelry, and told him that he wished to buy a pair of diamond earrings. He asked Spievack to deliver the earrings to him for the purpose of appraisal or testing. Spievack declined. The defendant thereupon did acts and made statements intended and adapted to demonstrate that he was worthy of credit and then asked Spievack to show him the pair of earrings. Spievack complied. The defendant then asked Spievack, who complied, to show him a second pair of diamond earrings. The defendant and his wife examined the two pairs and the defendant then requested Spievack to leave both pairs of earrings with him so that he might have them appraised or tested, and said: " Whichever one will be proven to be better we will take them." Spievack assented upon the condition, and it was agreed between them, that the defendant should return the two pairs of earrings to Spievack on the next day. The two pairs were worth $1,218. The defendant, instead of returning the earrings, pawned them —one pair on April 6, 1914, and the other on April 30, 1914— and sold the pawn tickets. The wife of Spievack went to the house of the defendant on April 3 to secure the return of the earrings, saw the defendant and his wife, and on April 6 the defendant stated to Spievack that he had not as yet had them appraised and when he had he would return them to Spievack. During the days immediately following, Spievack and his wife sought unsuccessfully to have interviews with the defendant in order to obtain the earrings. On April 19, 1914, the defendant sent to Spievack by a Mrs. Alperin certain promissory notes made by defendant and indorsed by his wife, payable to the order of Spievack. The aggregate face amount of those

notes does not appear. Spievack gave six or seven of the notes, indorsed by him, each for the amount of $76,50, to the firm from which he obtained the earrings and with which he dealt, and retained the others. He caused one for $300, due May 1, 1914, to be protested for non-payment. No part of any of the notes was paid. Those transferred by Spievack were returned to him and he produced all of them at the trial. Spievack and the defendant had no other business transactions. Spievack testified that the notes were given to him as security. There is no other evidence relating to the purpose for which the notes were sent to or received by Spievack. The defendant rested at the close of the People's case.

The Penal Code provides: " A person who, with intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person: 1. * * * 2. Having in his possession, custody, or control, as a bailee, servant, attorney, agent, clerk, trustee, or officer of any person, association, or corporation, or as a public officer, or as a person authorized by agreement, or by competent authority, to hold or take such possession, custody, or control, any money, property, evidence of debt or contract, article of value of any nature, or thing in action or possession, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof, steals such property, and is guilty of larceny." (§ 1290.)

The trial judge, as a part of his charge, read this section to and instructed the jury to determine whether or not the defendant intended to deprive or defraud Spievack of the earrings and whether or not he was the bailee or vendee of them and, *inter alia*, stated to the jury: " Now the defendant contends, by the cross-examination of the witnesses and through certain notes and through argument of counsel, asking your deductions from that data, that certain notes were received, that there was a sale,

that the defendant bought from this complaining witness this property. * * * If you find as a matter of fact that there was a sale of those diamonds and that it was the intention of the complaining witness to sell the diamond earrings to the defendant and that it was the intention of the defendant to purchase those diamonds, * * * then I charge you that both title and possession of the diamonds passed to the defendant and the defendant cannot be convicted of the crime charged and it will be your duty to render a verdict of acquittal. On the other hand, if you find as a fact that it was not a sale, but that the earrings were delivered by the complaining witness for some specific purpose such as I have already expressed and that on failure of that they were to be returned, or that the money was to be returned, then I say that this defendant had no right or authority to dispose of the diamonds in any other way than for the express purpose for which they were originally delivered to him. And if he did dispose of them in any other way or appropriated them to his own use, then he converted the diamond earrings to his own use, and if he did so with the felonious intent to deprive and defraud the owner of the diamond earrings of his property and to appropriate the same to his own use, then he is guilty of grand larceny of the first degree as charged in this indictment. Now I charge you further as to these notes, that it makes no difference at all whether these notes were given or not at that subsequent date. If you believe that on that 6th day of April this defendant pawned that first pair of diamond earrings, the fact that he gave notes through some intermediary, Mrs. Alperin, at a later date, makes no difference, if you believe that on the 6th day of April he exercised an ownership over that pair of diamond earrings, and in furtherance of that act, pawned them, and that he had at that time the felonious idea of appropriating to himself the result of that pawning; I say to you if you believe that evidence beyond a reasonable doubt, he is guilty as charged in this indictment, of grand larceny in the

first degree, and of course you should take into consideration both pairs of diamond earrings when you come to consider this case."

The two requests of the defendant refused by the trial judge were: " I ask your Honor to charge that if there was an arrangement at the inception of this transaction between Scharf and Spievack by which Scharf was to give certain notes and Spievack was to accept notes in payment of the earrings that Scharf was not then a bailee and that there was no bailment. The Court: There is no such evidence. I decline to charge except as I have already charged." " I ask your Honor to charge, in view of what your Honor has stated, that the jury have the right, if they so find, to draw the conclusion from the fact that these notes were accepted, were given by Scharf and accepted by Spievack by indorsement, that there was such an arrangement between Spievack and the defendant. The Court: I decline to charge except as I have already charged."

The Appellate Division, in reversing, held, that from the fact that the notes were subsequently given and accepted and used by Spievack the jury might infer that there had been a sale at first, with the agreement that payment was to be made by means of the notes, or at least might entertain a reasonable doubt whether or not the notes were so given and accepted pursuant to an original understanding that they should be accepted as payment, so that there had been originally a real sale. In this the Appellate Division erred.

The acts of sending the notes to and the receiving and using of a part of them by Spievack stand isolated, unconnected by the evidence with any precedent act and wholly unexplained, except in the one sentence of the testimony of Spievack that just as the notes were given to him as security, so he handed them as security to the firm from which he obtained the diamonds. The evidence in proof of the facts that the defendant asked Spievack to sell him a pair of earrings, that he caused Spievack

to regard him as a worthy credit, that he received from Spievack two pairs for the purpose of appraising or testing and enabling him to select one of them, upon the condition that he would return them to Spievack on the day following, that Spievack and his wife sought frequently to secure the return of the earrings and that he pawned the one pair on April 6 and the other pair on April 30 is direct and unequivocal. It is in no wise contradicted, and the transaction of the giving and receiving the notes on April 19 and the use of a part of them by Spievack is the only evidence potentially inconsistent with it. Unless the sending of the notes by the defendant and their receipt and treatment by Spievack was evidence of the existence of " an arrangment," as mentioned in the first request, there was no evidence of the arrangement. Those acts were not direct evidence that the original transaction was a sale and not a delivery for a special purpose. At the most, they support an inference that it was a sale. But is such inference a " scintilla " of evidence as against the direct and unequivocal testimony of Spievack and the other witnesses in behalf of the People? It is not unless it is the only inference which can fairly and reasonably be drawn from those acts. There must be not only positive proof of the facts which create or permit the inference invoked, but the inference must be the only one which can reasonably be drawn from those facts. (People v. Harris, 136 N. Y. 423; Schultz v. Hoagland, 85 N. Y. 464.) The inferences are reasonable that Spievack, having strenuously and unsuccessfully endeavored through seventeen days to recover the earrings, accepted the notes, as he might have accepted property of the defendant, as some compensation or restitution for his loss, or as security for the return of the earrings. To infer, because the notes were sent and received, that the original transaction was a sale and delivery is merely to conjecture or surmise. It is to choose one inference out of several. Such might be or might not be the fact. A possibility or a bare probability, un-

der the evidence, that the original transaction was a sale, is not sufficient. It is not enough to create a conjecture or suspicion, nor should the jury be permitted to guess at the truth. If the transaction was different from what the People proved it, it was incumbent on the defendant to show it. He does not show it by proving facts permitting different inferences, some of which are consistent with the evidence of the People. An inference which will avail him must be contradictory of the People's proof and the only one reasonably to be drawn from its supporting facts. A mere choice of possible or conjectural theories will not suffice. (Jaeger v. Kelley, 52 N. Y. 274; Smith v. Lawrence, 98 Me. 92.) A mere surmise or conjecture does not raise a conflict of proof or a question of fact. (Baulec v. N. Y. & H. R. R. Co., 59 N. Y. 356; Bond v. Smith, 113 N. Y. 378; Pollock v. Pollock, 71 N. Y. 137, 153; Pauley v. Steam G. & L. Co., 131 N. Y. 90.) Insufficient evidence is, in the eye of the law, no evidence. (Matter of Case, 214 N. Y. 199, 203.) There is not, as has been stated, a word of direct evidence attesting that the original transaction was a sale or other act than a bailment. The evidence that it was a bailment was clear, consistent and convincing. The inference from the receipt of the note that it was a sale is too avoidable, conjectural and uncertain to be deemed conflicting evidence, and the refusals of the trial judge were proper.

The respondent attempts to sustain the reversal upon grounds other than those put forward by the Appellate Division. We think no one of those grounds possesses a merit requiring statement or discussion.

The judgment of the Appellate Division should be reversed and that of the County Court of Kings county be reinstated and affirmed.

WILLARD BARTLETT, Ch. J., HISCOCK, CUDDEBACK, HOGAN, SEABURY and POUND, JJ., concur.

Judgment accordingly.