In the Matter of the VILLAGE OF WESTFIELD, Petitioner, against MILO R. MALTBIE et al., Constituting the Public Service Commission of the State of New York, Respondents.

Third Department, December 29, 1942.

*Albert R. Connelly* and *George S. Collins* for petitioner.

*Gay H. Brown* and *George H. Kenny* for respondents.

FOSTER, J. The Legislature has directed the Public Service Commission to prescribe rules and regulations for the testing of electric meters (Public Service Law, § 67; Cons. Laws, ch. 48). In conformity with this mandate it has for many years required meters to be tested without removal from their positions of instalment. An electric meter is obviously a delicate instrument, and so the proof shows. The requirement of testing the same in position has proven over a period of years to give a maximum of accuracy in results. To grant the application of petitioner would require a change in the rules so as to permit the removal of a meter from its fixed position and the insertion of a so-called jack before testing. The Commission has found that such a method does not preclude the possibility of error. Quite evidently it has balanced a practice, known from actual use to be accurate, against experimental tests conducted largely by interested parties under conditions not clearly those to be anticipated in actual use. Moreover there were admissions by experts that the removal of meters might affect the accuracy of tests. The Commission had a right to require more convincing proof before abandoning a practice of known success.

Article 78 has its limitations. It should not be applied rigidly to proceedings of the character involved here. No burden was cast on the Commission to defend a regulation conceded to be successful, rather it is the quality of proof produced by petitioner as to the accuracy of a new method that is under scrutiny. The issue is whether such proof is so overwhelming that its

rejection must be considered arbitrary. The testimony as a whole leaves some room for doubt, at least, as to the efficacy of the new method. Under these circumstances the judgment of the Commission should not be disturbed, and our own views substituted in place thereof.

HILL, P. J. (dissenting). The village of Westfield is the petitioner in a proceeding brought under article 78 of the Civil Practice Act to review a determination made by the Public Service Commission denying its application for an unconditional approval of the socket type electric meter for installation in that village which is the owner and operator of a utility supplying electricity for light, heat and power to its inhabitants. It is pleaded and asserted by the petitioner, and not controverted, that in about the year 1930 there was developed and introduced a new type of electric watt-hour meter generally designated as the socket type, for brevity designated as the " S " type. In meters theretofore used, for brevity designated as the " A " type, the terminal wires leading from the source of supply to the point of utilization are connected to terminal and test facilities located in a separate base to which the meter is affixed. The socket type differs in that the terminal wires are connected to contact jaws located within the receptacle, electrical connection to the meter being established by contact between metal plates attached to the removable meter and the contact jaws of the meter socket. A feature of the " S " type is that its accuracy is tested by inserting between the socket and the meter a device called a test jack which is connected with testing equipment, thereby eliminating the necessity for connecting leads from the testing equipment to terminal posts exposed for testing in the " A " type. The advantages claimed for the " S " type are safety and accuracy in testing, reduced cost and stability of construction and appearance for outdoor installation, which is desirable. The element of danger in testing the " A " type arises when the wires are disconnected from the posts within the meter. This operation frequently produces sparks. The " A " type is being supplanted by " S " type meters in new installations in all the States of the United States except New York; in three of the States where there are bodies similar to the Public Service Commission it has been approved. It is specified as regular equipment by many agencies of the Federal Government. The only evidence given was by petitioner's witnesses and those presented by the New York Municipal Electric Utilities Association, and all gave testimony favorable to the approval of the " S " type.

The conclusion reached by the Commission is shown by the opinion: " On the basis of the results derived from the above tests, it might be maintained that sufficient proof has been presented to bear out the contention of the petitioner's witnesses that the necessary handling of a meter in the course of test jack operations does not affect its accuracy as compared with an ' as found ' test. It is impossible to concur with such reasoning. What the test shows is that there is a *probability* that the accuracy of a socket type meter will not be affected by operations concurrent with the use of a test jack.  *  *  *  The question before the Commission is whether or not there is any possibility of the accuracy of an " S " type meter being affected by removal from its socket in every case.  *  *  *  The possibility that the accuracy of this meter may be affected by its removal from the socket has not been conclusively disproved and the advantages that may be associated exclusively with socket type meters used with a test jack do not appear to be of sufficient import to warrant loss of assurance that would probably follow its general adoption."

It may not be gainsaid that determination of this character should be made by experts trained in that field and not by the courts. Experts did investigate, and each gave testimony rejected by the Commission, which determined that a possibility of inaccuracy was not conclusively disproved. May the Commission as matter of law, without proof by experts, disapprove a device generally used, because in its mind there is a fraction of a possibility of inaccuracy?

Possibly recourse to the statute itself should be had to determine the jurisdiction of this court under article 78. Where the Public Service Commission has made a determination following a hearing at which evidence was taken, the court is to determine the following questions: " 6. Whether there was any competent proof of all the facts necessary to be proved in order to authorize the making of the determination.

" 7. If there was such proof, whether, upon all the evidence, there was such a preponderance of proof against the existence of any of those facts that the verdict of a jury, affirming the existence thereof, rendered in an action in the Supreme Court triable by a jury, would be· set aside by the court as against the weight of evidence." (Civ. Pr. Act, § 1296.)

" If the proceeding is brought to review a determination, the court may annul or confirm, wholly or partly, or modify the determination reviewed  *  *  *." (Civ. Pr. Act, § 1300.)

The Commission in making decisions is not omnipotent.

" Competent proof of all the facts " is necessary. A possibility " not * * * conclusively disproved " is not competent proof. " A mere conjecture built upon a bare possibility will not suffice to transfer the money or property of one man to the possession and profit of another. As we said in *Bond* v. *Smith* (113 N. Y. 378), food for speculation will not serve as the basis of a verdict." (*Pauley* v. *S. G. & L. Co.*, 131 N. Y. 90, 100.)

*Bond* v. *Smith* (quoted *supra*) contained a statement not there quoted, " The law demands proof, and not mere surmises." " Insufficient evidence is, in the eye of the law, no evidence." (*People* v. *Scharf*, 217 N. Y. 204, 211.) The opinion in *Matter of Case* (214 N. Y. 199) quoting from the English case of *Jewel* v. *Parr* (13 C. B. 916) says, " When we say that there is no evidence to go to a jury, we do not mean that there is literally none, but that there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established." (p. 204.) The determination of the Commission should be annulled.

BLISS, HEFFERNAN and SCHENCK, JJ., concur with FOSTER, J.; HILL, P. J., dissents, in an opinion.

Decision confirmed, with fifty dollars costs.