## SECOND DEPARTMENT, MARCH, 1984

### (March 5, 1984)*

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JUSTIN WHITE, Respondent. — Appeal by the People from an order of the Supreme Court, Queens County (Hentel, J.), dated October 23, 1981, which granted defendant's motion to set aside the jury's verdict finding him guilty of the crime of a scheme to defraud in the first degree and to dismiss the indictment. ¶ Order reversed, on the law, jury verdict reinstated and case remitted to the Supreme Court, Queens County, for the imposition of sentence. ¶ Scheme to defraud in the first degree, under section 190.65 of the Penal Law, states in relevant part: ¶ "1. A person is guilty of a scheme to defraud in the first degree when he (a) engages in a scheme constituting a systematic ongoing course of conduct with intent to * * * obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and (b) so obtains property from one or more of such persons. ¶ "2. In any prosecution under this section it shall be necessary to prove the identity of at least one person from whom the defendant so obtained property, but it shall not be necessary to prove the identity of any other intended victim." ¶ The trial court found that defendant did not employ any false promises, pretenses or misrepresentations, and accordingly held, as a matter of law, that there was no proof of defendant's intent to defraud any individual or engage in a scheme to defraud 10 or more persons. ¶ We cannot agree. The evidence established that defendant not only engaged in direct misrepresentations, but also employed a captious, deceptive and misleading sales "pitch" which was designed and intended to be misinterpreted by those solicited. ¶ Defendant was the office manager for the "Police Officers Times". ¶ His compensation consisted of a 35% share of the weekly gross advertising revenue for directing and controlling the solicitation of "advertising" from merchant businesses. He was personally responsible for the commissions of his telephone solicitors, and in addition paid the salaries of men hired to pick up the solicited funds. ¶ When dealing with merchants and employees, defendant used several false names, including Nick Conte and Jack Tracey. Under his supervision, and at his direction, two telephone solicitors also used false names. Defendant instructed these solicitors to follow a written sales "pitch" which described the "Police Officers Times" as "[t]he police newspaper", and

* This is the complete text of the decision of March 5, 1984 incompletely published at 100 AD2d 522. [Rep

"our police newspaper". The solicitors were instructed to emphasize the word "police" throughout the "pitch". A former employee of defendant testified that 5 to 10 solicitors made calls every day, and that he personally averaged 75 calls per day. He testified that every month defendant instructed him to emphasize a new lead article on a current police related topic, such as bullet proof vests. Several checks received were payable to the police vest fund. The witness testified that he never saw printed any of the lead articles which he promoted. Indeed, only one paper was published during his entire seven-month tenure as a solicitor. In addition to the false names employed, the misleading nature of the publication's name and its use and emphasis in the "pitch", direct misrepresentations were part and parcel of the scheme. Solicitees were promised "business card size" ads for $50. The "pitch" read, "[w]hat we do is take your business card, reproduce it in the paper; it is fifty dollars, tax deductible". ¶ The People introduced the testimony of 12 merchants who had been solicited by the "Police Officers Times". Each described his or her payment to the "Police Officers Times" as a contribution or donation. Those who paid $50, instead of receiving a business card size ad, received an "ad" less than one tenth that size which appeared on a page with up to 250 other ads. In addition, many of the merchant witnesses testified that they expected their contributions to benefit the police department — to wit: The money "was supposed to be for the policemen's vests"; the check "was made out in order to benefit the Police Department"; the purpose of the check "was for the Police Vests Fund"; the donation was "to encourage more police to get out on the streets"; the purpose of this check was "for a bullet proof vest"; "the contribution or $80.00 would be going towards some — for the benefit of the police"; some of the money was for "the police"; and a conversation about gun control "got me to donate my fifty dollars". ¶ While the trial court's position was that it had erred in admitting such testimony, we find it material and probative on the captious and misleading nature of the publication's title and its use in the sales pitch. The telephone solicitations were obviously made to 10 or more persons, and were plainly designed to prompt merchants to give their money to defendant. The merchants did give their money to him in reliance upon both false *and* misleading representations. ¶ Defendant argues on appeal that the merchants did not rely on the patently false representations regarding the size of the "ads". Contrary to defendant's assertion that this absence of reliance on size negates an element of the crime, we find that this fact belies the assertion that defendant was engaged in a purely private commercial enterprise, which was intended to be understood as such by those solicited. That the merchants who testified were not primarily concerned with the size of their ads indicated that they relied on the misleading nature of the "pitch", and believed their payments were contributions of a charitable, and not commercial, nature. ¶ Returning to section 190.65 of the Penal Law, we note that this statute, which became effective on January 1, 1977 (L 1976, ch 384, § 2), derives from the Federal mail fraud statute (US Code, tit 18, § 1341) and contains parallel language (see Givens, Additional Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law, § 190.60, p 143, 1983-1984 Pocket Part). Accordingly, the New York courts have found cases brought under the mail fraud section highly relevant to construction of this relatively new section (see *People v Ford,* 88 AD2d 859, 862; *People v Jones,* 117 Misc 2d 647, 649; *People v Block & Kleaver,* 103 Misc 2d 758, 764; *People v Lennon,* 107 Misc 2d 329, 333; Givens, *op. cit.,* p 144). We find the Federal cases particularly instructive where the representation involved is designed to be misinterpreted, i.e., the misrepresentation is implied. ¶ "[A] scheme need not be fraudulent upon its face, and need not misrepresent any fact, because all that is necessary is that it be a scheme reasonably calculated to deceive persons of ordinary prudence and comprehen-

sion" (*Silverman v United States,* 213 F2d 405, cert den 348 US 828). Defendant's scheme was reasonably calculated to deceive. The "pitch" contained deceitful statements, half truths, and concealed material facts. Solicitors misidentified themselves, implied that they were associated with the police department, concealed that they were not so associated, and implied that funds they solicited would aid the police department. "[T]he devising of a scheme for obtaining money or property by such statements or concealments is within the prohibition of the statute" (*Williams v United States,* 368 F2d 972, 975, cert den 386 US 997; cf. *United States v Blake,* 488 F2d 101; *Linden v United States,* 254 F2d 560). "[T]he effect of the solicitations upon the recipients is a highly pertinent fact in determining whether the solicitations are of the nature charged" (*Linden v United States, supra,* p 566). Accordingly, the captious, misleading and deceptive nature of defendant's solicitations are evidenced by their effect on the merchants, who contributed in expectation of aiding the police department. ¶ We now turn to the issue of intent. Specific intent to defraud is the key element under section 190.65 of the Penal Law, as it is under the mail fraud statute (see Givens, *op. cit.,* p 144). ¶ Fraudulent intent, as an element of the crime, is often not susceptible of proof by direct evidence. Most often, it must be inferred from circumstantial evidence adduced at trial. Defendant's knowledge of the misleading and deceptive nature of his solicitations, as well as deceptive practices employed by his solicitors, is highly probative on the issue of his intent. It is clear that defendant not only knew his solicitors used false names, but directed them to do so. One former employee testified that defendant was present when one of the solicitors identified himself over the telephone as a police officer. An undercover detective testified that defendant commented that it was "fine" if the solicitees thought they were contributing to the police or to the bullet proof vest fund. Defendant also received several checks made out to the bullet proof vest fund. In addition, defendant, who supervised solicitation from the "pitch", was fully aware that $50 ads would not result in a business card size ad, but instead would be one tenth that size, and placed on a tabloid size page with as many as 250 other "ads". In the face of such knowledge, the jury was more than justified in finding a scheme to defraud (see *Rice v United States,* 149 F2d 601, 603; *Linden v United States,* 254 F2d 560, 566, *supra*). We note that it was not necessary for defendant to own the "Police Officers Times" nor "mastermind" the scheme, in order to prove intent. The People presented sufficient evidence to show that he willfully participated "with knowledge of [the scheme's] fraudulent nature and with intent that these illicit objectives be achieved" (see *United States v Price,* 623 F2d 587, 591, cert den 449 US 1016). ¶ This is "not a situation where the proof in support of the verdict so clearly failed to come up to the statutory standard * * * as to warrant vacatur of the verdict by the trial court" (see *People v Johnson,* 77 AD2d 666, 667). The evidence was legally sufficient to establish that defendant engaged in a scheme intentionally designed to deceive 10 or more persons by implication, and that he received property from at least one intended and identified victim of that scheme. Accordingly, the order is reversed, defendant's motion denied, the verdict reinstated and the matter remitted to the Supreme Court, Queens County, for sentencing. Mollen, P. J., Lazer, Mangano and Brown, JJ., concur.