OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant Herbert Kaminsky has been charged under indictment No. 4275/84 in 11 counts, with grand larceny in the second degree (Penal Law § 155.35), and in one count, with a scheme to defraud in the first degree (Penal Law § 190.65). The *498 defendant Kaminsky has also been charged, jointly with the defendants Carnevale and Weiser, under indictment No. 4274/84 in three counts with grand larceny in the second degree, and in one count with a scheme to defraud in the first degree. The defendants have moved to dismiss the indictments on various grounds, including insufficiency of the evidence to justify the charges (CPL 210.20 [1] [b]).
In reviewing the Grand Jury minutes to determine whether the evidence was legally sufficient to support the charges (CPL 70.10 [1]), the court must view the evidence most favorable to the People’s theory and presume that the Grand Jury drew any inferences that the evidence would permit supportive of the indictment. (Compare, People v Pelchat, 62 NY2d 97, 105 [1984].)
INDICTMENT NO. 4275/84
The indictment against the defendant Kaminsky is predicated upon a series of 10 transactions between Kaminsky and different jewelry wholesalers, from November 1980 until April 1984. Count 4 of the indictment also includes a transaction in which Kaminsky allegedly acted as a loan broker. Each of these 11 transactions is separately charged as grand larceny in the second degree. There is also a single count of scheme to defraud in the first degree.
The jewelry transactions fall into a pattern. Kaminsky allegedly would contact a wholesaler of jewelry or watches and would ask to see samples of merchandise, ostensibly on behalf of prospective purchasers. In several instances, Kaminsky represented that the purchaser was an Atlantic City casino (counts 1, 6, 9); in other instances a law firm or a doctor (counts 2, 3). Kaminsky would use as a reference someone in the jewelry trade or known personally to the jeweler. The jeweler would bring a number of his wares to Kaminsky’s office. Kaminsky allegedly maintained numerous offices on Park Avenue, Lexington Avenue, Second Avenue, and Broadway, among other locations. At least one of the offices was in a jeweler’s building. Kaminsky also operated under a number of corporate names, including Premier Showcase, Brie Jewelers, and Beverage Container Recycling Corp. Once the jewelry was delivered, Kaminsky would use various means to induce the jeweler to leave items with him, purportedly for resale to the customers. In many instances, Kaminsky displayed a check purportedly issued by the customer, or a deposit slip, or would give a check as collateral. (Counts 1, 5, 7, 9.) Kaminsky sometimes represented that the customer’s check was drawn on a foreign bank and was not yet *499 collected by the local bank. Kaminsky also allegedly used other tactics to gain the jewelers’ trust, such as returning a portion of the jewels with which he was initially entrusted and then asking for other more valuable items to display to the customer. (Counts 5, 7, 10.) On occasion, Kaminsky would pay a small percentage of the purchase price and promise to pay the balance upon collection of the check (counts 1, 9) or upon delivery of the balance of the merchandise (count 6). In at least one instance (count 10) Kaminsky signed a consignment agreement, and in another instance (count 11) requested an accomplice to sign. In other instances, Kaminsky gave memoranda acknowledging receipt of the merchandise (counts 6, 7, 8, 9). In every instance, including those previously recited, witnesses testified that the jewelry was given to Kaminsky on consignment (counts 1,2,3, 5). The agreement, which is an established practice in the trade, stipulates that the consignee obtains possession but not title to the consigned items for the purpose of selling the items on behalf of the owner and of remitting the agreed upon value or, failing that, returning the items, unaltered, to the owner. The consignee assumes all liability for loss or damage in the amount agreed upon.
In every instance, Kaminsky allegedly received tens of thousands of dollars worth of jewelry on consignment and subsequently claimed that he was unable to acquire the purported customer’s funds or to return the jewelry. In one instance, after allegedly trying unsuccessfully to persuade a jeweler to give him possession of a $180,000 necklace, Kaminsky arranged a meeting where the necklace was displayed and simply walked away with it. (Count 8.) In another instance, after obtaining a $100,000 bracelet on consignment; Kaminsky refused to return it for six months until he agreed to ransom it for $50,000 in cash. (Count 5.) In other instances, Kaminsky allegedly attempted to settle with the jeweler for a portion of the value of the jewelry (counts 1, 10) or acknowledged his debt with personal notes which he subsequently dishonored (count 9).
The fourth count involves an alleged offer of loan brokerage services by Kaminsky through Premier Showcase, Inc. to one Cassidy. Kaminsky allegedly told Cassidy that Premier was a lending institution and “a lot of other things” and offered to obtain $300,000 in credit for Cassidy for a fee of $25,000. The fee was paid. The loan was never obtained. Kaminsky repaid Cassidy $6,500.
INDICTMENT NO. 4274/84
The defendant Kaminsky is also alleged to have engaged in similar transactions with the aid of defendants Weiser and *500 Carnevale. Specfically, the three defendants are charged with having on two occasions taken delivery of 1,000 dozen sunglasses, C.O.D. and having failed to pay for the delivered merchandise. In the first instance, defendant Kaminsky allegedly showed the owner a cashier’s check purportedly belonging to the prospective buyer, in an amount sufficient to cover the $19,800 cost of the glasses, and is alleged to have induced the owner to part with the glasses by representing that payment would be made in full when the check was cleared. (Count 2.) The defendant Carnevale was present during the transaction and signed an invoice. The seller ultimately received $4,000. In the second instance, the defendant Kaminsky allegedly ordered a second shipment of sunglasses from another company, C.O.D., claimed not to have sufficient funds to pay upon delivery, but took possession of the glasses and promised to pay the balance the following day. (Count 3.) Both Carnevale and Weiser were present and helped persuade the owners to leave the merchandise. Kaminsky ultimately executed promissory notes for the $18,000 cost, but paid only $2,000 on the notes. Both of these incidents occurred at 1350 Broadway within three days. On the first occasion, the business was represented as Kuwait Enterprises and on the second occasion, Beverage Container Recycling Corp.
Under the fourth count, the defendants are charged with having placed an advertisement offering to purchase clothing in a trade publication. The defendants represented themselves as Apparel Discount and accepted delivery of 280 coats valued at $40,000 from one O’Reilly in response to the advertisement. O’Reilly, pursuant to a conversation with Kaminsky, delivered samples of the coats. Weiser and Carnevale were present. Carnevale represented that he was a buyer from Alexander’s Department Stores who had agreed to purchase the lot. Kaminsky promised to pay O’Reilly upon delivery to Apparel. The coats were delivered. Kaminsky and Carnevale represented that Carnevale had to obtain a cashier’s check for the purchase price. Subsequently, Kaminsky told O’Reilly that Carnevale had found fault with the coats and that Alexander’s would not buy them. When O’Reilly again returned for the money or coats, the coats were gone. Kaminsky said he had sold the coats elsewhere. He gave O’Reilly a 40-day note, which he subsequently dishonored. O’Reilly demanded payment. He attended a meeting where Kaminsky, Carnevale and Weiser were present. He was paid $1,000 and told to return later in the day for the balance. Upon his return, the defendants and all evidence of the office were gone.
*501 Count 1 alleges a scheme to defraud, based upon “businesses [which] advertised that they would buy certain merchandise and obtained such merchandise by false and fraudulent pretenses, representations and promises.”
SCHEME TO DEFRAUD
Count 12 of indictment No. 4275 and count 1 of indictment No. 4274 charge a scheme to defraud in the first degree under Penal Law § 190.65 (1), which states: “A person is guilty of a scheme to defraud in the first degree when he (a) engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and (b) so obtains property from one or more such persons.”
The section derives from the Federal mail fraud statute (18 USC § 1341) and contains parallel language. (See, Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.65, 1984-1985 Pocket Part, p 197.) New York courts have consistently applied principles derived from the Federal statute in construing the Penal Law section. (See, e.g., People v White, 101 AD2d 1037, 1039 [2d Dept 1984]; People v Ford, 88 AD2d 859, 862 [1st Dept 1982].) The Penal Law section differs from the Federal statute by its inclusion of the phrase “a systematic ongoing course of conduct”, which one commentator suggests is intended to codify the Federal requirement of a “plan, plot or design * * * involving more than one isolated act, rather than * * * existing over any period of time.” (Givens, Additional Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.60, 1984-1985 Pocket Part, p 195.)
The defendants argue that the evidence herein fails to establish a unitary scheme within the meaning of the section. Given the derivation of the section, this court adopts the suggestion of the commentary that Federal case law is a reliable precedent for determining what constitutes a “scheme” within the Penal Law section. (See, People v Block & Kleaver, 103 Misc 2d 758, 764-765 [Monroe County Ct 1980].) Federal courts have interpreted “scheme” under 18 USC § 1341 to mean “a plan and a pattern” as opposed to isolated ad hoc acts. The existence of a scheme in cases of alleged fraud may be established by the similarity of fraudulent practices used in regard to numerous victims. (See, Fabian v United States, 358 F2d 187,193-194 [8th Cir 1966], cert denied 385 US 821; People v Block & Kleaver, at pp 764-765.) The scheme exists by virtue of the planned pattern of conduct, however, and not according to the number of persons actually *502 defrauded. (Penal Law § 190.60 [2]; § 190.65 [2]; see, Pereira v United States, 347 US 1,5 [1954].) Most significantly for present purposes, the details of the separate transactions alleged to comprise parts of the scheme do not have to be identical in every respect, as long'as the fact finder is satisfied that there are, among all the transactions, common elements by which each transaction may be identified as having been undertaken pursuant to an over-all fraudulent design. (See, e.g., Owens v United States, 221 F2d 351, 354-355 [5th Cir 1955]; People v Block & Kleaver, supra; People v Ford, 88 AD2d 859, supra.)
The court finds an identifiable pattern among the jewelry transactions alleged in indictment No. 4275 and the three transactions alleged in indictment No. 4274. Specifically, the defendant Kaminsky in each instance induced a merchandise wholesaler to entrust him with valuable merchandise on.consignment, induced by various false representations, and once having obtained possession of the merchandise, converted it to his own use. The fraudulent inducements common to every instance were the appearance of an established business address and corporate title, and of solvency in the form of substantial customers, funds on account and references. (See, Owens v United States, supra.) The inference that these transactions were not coincidental misfortunes afflicting an honest businessman, but were undertaken with fraudulent intent was supported not only by the frequency of occurrence (on at least 13 occasions at intervals of a few months or weeks over a period of four years), but also by evidence as to the nonexistence of a bank upon which one check was purportedly drawn (see, e.g., Underwood v Globe Indem. Co., 245 NY 111 [1927]) and by numerous other instances of worthless checks given by the defendant Kaminsky (see, e.g., People v Lennon, 107 Misc 2d 329, 332 [Broome County Ct 1980]); by the defendant Kaminsky’s ransom of a bracelet for $50,000; and by Kaminsky’s numerous threats intended to intimidate the victims from going to the police. (See, Beck v United States, 305 F2d 595, 598 [10th Cir 1962], cert denied 371 US 890.) Only the loan transaction in count 4 of indictment No. 4275 does not follow the general pattern.
It is not necessary, as the defendants suggest, to establish that each of the transactions at issue or the scheme in general constitutes a specific form of larceny. The defendants contend that insofar as the goods were obtained on consignment, the owners transferred possession in reliance upon a promise to resell and remit the proceeds or to return the property, and were not induced by any fraudulent representation as to defendants’ solvency, business practices, reputation or the identity or exis *503 tence of customers. The defendants argue therefore that the alleged fraudulent misrepresentations did not induce the transfer of property. While this line of reasoning might be persuasive in a prosecution for larceny by false pretenses (see, e.g., People v Gross, 51 AD2d 191, 196 [4th Dept 1976]; People v Pisciotta, 98 AD2d 926, 927 [3d Dept 1983]), it is immaterial in a prosecution for a scheme to defraud. (Compare, United States v Carmichael, 497 F2d 36 [5th Cir 1974]; cf. People v Block & Kleaver, 103 Misc 2d, at p 764; People v Lennon, 107 Misc 2d, at p 331.) A scheme to defraud may be predicated upon a conscious “ ‘disregard to the truth of representations made’ ” (People v Ford, 88 AD2d, at p 861, quoting Givens, Additional Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.60, 1981-1982 Pocket Part, p 194), whereas larceny by false pretenses requires a knowingly false misrepresentation. (Penal Law § 15.05 [2], [3]; see, People v Chaitin, 94 AD2d 705 [2d Dept 1983], ajfd 61 NY2d 683.) As Givens observes, the fraudulent instrumentalities used in a scheme to defraud might be predicated upon violations of the General Business Law or even the intentional abuse of civil process such as obtaining property through default judgments intentionally entered without proper service. (Givens, Additional Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 190.60, 1984-1985 Pocket Part, p 195; see, United States v Wiseman, 445 F2d 792 [2d Cir 1971], cert denied 404 US 967.) In the latter instance, the judgment debtor would have no knowledge of the fraud by which he was relieved of title to his property and proof of a specific form of larceny might be impossible under such circumstances. (See, People v Lobel, 298 NY 243, 255 [1948]; People v Pisciotta, supra; People v Churchill, 47 NY2d 151, 155 [1979].) The distinction between a scheme to defraud and proof of larceny in its various forms is apparent upon the face of the statute, which is phrased in the disjunctive: “a systematic ongoing course of conduct with intent to defraud * * * or to obtain property * * * by false or fraudulent pretenses, representations or promises” (Penal Law § 190.60 [1]; § 190.65 [1]; emphasis added).
The court finds that the Grand Jury was justified in concluding that Kaminsky’s misrepresentations were made with intent to defraud and that those misrepresentations were central to the course of conduct by which the property was obtained. Further proof of reliance by a particular victim upon specific misrepresentations was not required. (See, People v White, 101 AD2d 1037, supra; United States v Carmichael, supra.)
The scheme to defraud was insufficiently proved, however, with regard to the defendants Weiser and Carnevale. There is no *504 evidence that they were involved in the jewelry transactions. (Indictment No. 4275.) Their involvement in the sunglasses transactions was not such as to warrant the inference that they knew of and acquiesced in Kaminsky’s misrepresentations in regard to the source and negotiability of the purported custom- . er’s cashier’s check (indictment No. 4274 — count 2) or shared Kaminsky’s intent not to honor his personal notes (indictment No. 4274 — count 3). The use of those devices to induce the owners to part with their sunglasses is the principal similarity between the sunglasses caper and the jewelry cases. Therefore, Weiser’s and Camevale’s liability as accomplices in the scheme to defraud depends upon their role in regard to the coat scam (indictment No. 4274 — count 4). The pattern underlying count 4 is sufficiently similar to the jewelry cases to warrant its inclusion as proof of the scheme to defraud, in regard to Kaminsky. Carnevale posed as the prospective buyer, representing Alexander’s, and the owner was diverted from the original promise to pay upon delivery, by Camevale’s purported need to obtain a cashier’s check, and subsequently by Weiser’s and Carnevale’s assistance in providing token repayments. Carnevale and Weiser were present from the outset of the transaction. However, insofar as this incident occurred in February 1984 after all but one of the other transactions, and absent proof that either defendant knew of or participated in any of the other transactions underlying the scheme to defraud, the court holds that the evidence of their complicity in the over-all scheme is insufficient. (Cf People v Jones, 104 AD2d 330 [1st Dept 1984]; People v Ford, supra; see, United States v Blake, 488 F2d 101, 106 [5th Cir 1973].) Accordingly, count 1 of indictment No. 4274 is dismissed.*
LARCENY
The principal issue remaining, with regard to the legal sufficiency of the evidence, is whether there exists any theory of larceny under which one who receives merchandise on consignment to either sell, return, or make good the value, may be prosecuted for failure to do any of those things. The indictment suffices to allege larceny in any form except by extortion. (Penal Law § 155.45 [2].) The prosecutor is not compelled to adopt one theory of larceny to the exclusion of all others, but the evidence must suffice to establish larceny in some recognizable form. (Cf. *505 People v Perlstein, 97 AD2d 482, 484 [2d Dept 1983]; People v Silverman, 106 Misc 2d 468, 470 [Sup Ct, NY County 1980]; People v Johnson, 39 NY2d 364, 369 [1976].)
The consignment of jewelry for purposes of sale at an agreed upon price is an ancient practice, and the conversion of such jewelry by unscrupulous consignees has always been regarded as larcenous. (See, e.g., Weyman v People, 4 Hun 511 [1st Dept 1875], affd 62 NY 623.) The theory of larceny generally applied has been embezzlement, since the consignee is entrusted with possession of the property pursuant to an express agreement either to sell it and remit the proceeds or to return the unsold item to the owner. Such an agreement constitutes a bailment. (See, People v Hazard, 28 App Div 304 [1st Dept 1898], affd 158 NY 727.)
The existence of bailments, with regard to indictment No. 4275, was proved in each instance by written consignment agreements (counts 10, 11) or by memoranda of receipt of property (counts 1, 6-9) and testimony as to accompanying oral agreements and/or customs of the jewelry trade. (Counts 2, 3, 5.) (See, Sanette Corp. v Sanette Corp. of New England, 132 Misc 455, 459 [App Term, 1st Dept 1928]; cf. People v Yannett, 49 NY2d 296, 302-303 [1980].) There also was evidence with regard to indictment No. 4274 (counts 2, 4) of oral agreements to take possession of the goods on behalf of the owner, for sale at a specified price to a purchaser from whom payment was to be obtained. Conversion with criminal intent, inconsistent with the terms of the bailments, was established in each instance by the failure to remit the proceeds of sale or to return the consigned property, together with evidence of contemporaneous misrepresentations when the property was received, and subsequent fraudulent and extortionate behavior such as the use of dishonored personal notes or bad checks as supposed guarantees, threats and ransom demands, and flight from the consignor. (See, e.g., People v Silverman, 106 Misc 2d, at pp 471-474; People v Olivo, 52 NY2d 309, 317-318 [1981]; People v Faggello, 182 App Div 15,17 [2d Dept 1918]; People v Scharf 217 NY 204, 211 [1916]; People v Hazard, 28 App Div, at p 307; People v Shears, 158 App Div 577, 580-581 [2d Dept 1913], affd 209 NY 610; Meese v Miller, 79 AD2d 237, 242-243 [4th Dept 1981].)
The Grand Jury was, moreover, justified in charging larceny even absent sufficient proof of bailment, upon the alternate theory of larceny by trick, which includes the use of a falsely expressed purpose or intent to induce the owner to part with possession, but not title to, his property. (People v Miller, 169 NY *506 339 [1902]; People v Churchill, 47 NY2d 151, 155-156 [1979].) Specifically, the Grand Jury was justified in each instance in finding that the defendant Kaminsky and, in the case of indictment No. 4274, count 4, all three defendants, falsely expressed an intention and purpose to display the property to potential buyers and thereby induced the owners to transfer possession of the property to the defendants, who were in fact motivated solely by an intent to appropriate the property for their own benefit. (Weyman v People, 4 Hun, at pp 515-516; Giannetto v General Exch. Ins. Corp., 10 AD2d 442, 445 [4th Dept 1960]; People v Miller, supra.)
The defendant Kaminsky argues that, at least in those instances in which he received invoices for the allegedly consigned property (indictment No. 4275 counts 1, 6, 7; indictment No. 4274 count 2), and in those instances when a partial payment was made prior to (indictment No. 4275 count 9), contemporaneously with (indictment No. 4275 counts 1, 6), or subsequent to (indictment No. 4275 counts 1,10; indictment No. 4274 counts 2, 3, 4) delivery, there was a conditional sale and transfer of title and, thus, neither embezzlement nor larceny by trick. (See, e.g., Zink v People, 77 NY 114, 123 [1879].) As matters of fact the Grand Jury could justifiably have found that the purported invoices were merely a convenience and served as memoranda of possession and not evidence of a sale. The giving of personal notes or subsequent payment of a fraction of the value of the property could have been justifiably interpreted as part of the scheme to appropriate the greater part of the property’s value without retribution by the owner, consistent with other conduct such as threats and flight. (See, People v Scharf, 217 NY, at pp 210-211; People v Hazard, 28 App Div, at p 307; Hansen v National Sur. Co., 257 NY 216, 220 [1931]; People v Kaye, 295 NY 9,13 [1945]; People v Rosenbaum, 107 Misc 2d 501, 506 [Sup Ct, Rockland County 1981].)
In any event, assuming that the evidence compels a finding of a sale in those instances of previous partial payment and/or receipt of an invoice (indictment No. 4275 counts 1, 6; indictment No. 4274 counts 2, 3), a charge of larceny by false promise is nonetheless warranted, upon these facts {cf., e.g., People v Churchill, 47 NY2d, at pp 156-157). There is a higher burden of proof in regard to larceny by false promise (Penal Law § 155.05 [2] [d]) because of the close relationship this form of larceny holds with mere civil wrongs. (People v Ryan, 41 NY2d 634, 640 [1977].) Here, however, the defendant Kaminsky’s intention not to perform either his promises to display the jewelry he received on consignment to prospective purchasers, or his promise to pay *507 for goods he arguably received “cash on delivery” (indictment No. 4275 counts 1, 6, 9; indictment No. 4274 counts 2, 3) is established to a moral certainty by the circumstances surrounding his receipt of the property, including his misrepresentations as to the negotiability of purported checks to be applied against the purchase price (indictment No. 4275 counts 1, 9; indictment No. 4274 counts 2, 4; see, e.g., Underwood v Globe Indem. Co., 245 NY 111, supra); his use of dishonored personal notes (indictment No. 4275 count 9; indictment No. 4274 counts 3, 4; see, e.g., People v Scharf, supra); his flight from the owners (indictment No. 4275 count 6; indictment No. 4274 count 4; Hansen v National Sur. Co., supra; People v Perlstein, 97 AD2d 482, 483 [2d Dept 1983]) and the virtual identity between the pattern of defendant’s conduct in the purported sales and the other aspects of the established scheme to defraud. (Penal Law § 155.05 [2] [d]; People v Luongo, 47 NY2d 418 [1979]; People v De Muirier, 106 AD2d 266 [1st Dept 1984]; compare, Weyman v People, A Hun, at pp 516-519.)
Moreover, if Kaminsky’s contention that the transaction underlying count 4 of indictment No. 4274 was a sale is accepted, the defendants are alternately liable for larceny by false pretense (Penal Law § 155.05 [2] [a]) based upon their acquiescence in Carnevale’s knowing misrepresentation that he was a buyer for Alexander’s which, the Grand Jury could reasonably have concluded, induced O’Reilly to part with his coats. (See, e.g., Giannetto v General Exch. Ins. Corp., 10 AD2d, at pp 444-445.)
Count 4 of indictment No. 4275 is dismissed, since there is no evidence as to what misrepresentations, if any, Kaminsky made to induce Cassidy to pay him to obtain credit on Cassidy’s behalf; since there is no evidence of other similar transactions of this nature; and since there is no evidence of larcenous intent apart from Kaminsky’s failure to perform. (Cf., e.g., People v Ford, 103 Misc 2d 249, read in part 88 AD2d 859, supra; People v Churchill, supra; see, People v Duda, 79 AD2d 712 [2d Dept 1980].)
Counts 2 and 3 of indictment No. 4274 are also dismissed as to defendants Carnevale and Weiser, since there is no evidence of their complicity in Kaminsky’s misrepresentations in regard to the purported buyer or the cashier’s check (count 2) or in regard to his promise to pay on the next day and his use of dishonored personal notes (count 3). While there was some evidence as to count 3 from which the Grand Jury may have inferred a larceny by withholding in which Carnevale and Weiser participated, the evidence was entirely hearsay and, hence, incompetent to sustain the count. (People v Percy, 74 Misc 2d 522, 532-533 [Suffolk *508 County Ct 1973], affd on other grounds 38 NY2d 806; see, People v Oakley, 28 NY2d 309, 314; CPL 190.30 [1]; 60.10.)

 To the extent that the count is intended to allege a separate scheme to defraud based upon advertisements to purchase merchandise as a means of obtaining possession without intent to pay, it is unsupported by the evidence. There is no evidence as to the manner in which the sunglasses were solicited in either instance.