■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS DOWNEY, Appellant. THE PEOPLE OF THE STATE OF NEW

YORK, Respondent, v GEOFFREY HORN, Appellant. [772 NYS2d 307]—

Judgments, Supreme Court, New York County (John Bradley, J.), rendered March 18, 2002, convicting defendant Downey, after a jury trial, of six counts of violation of General Business Law § 352-c (5) and four counts of violation of General Business Law § 352-c (6), and convicting defendant Horn, after a jury trial, of five counts of violation of General Business Law § 352-c (5) and three counts of violation of General Business Law § 352-c (6), and sentencing Downey to an aggregate term of 6 to 18 years and Horn to an aggregate term of 5 to 15 years, unanimously reversed, as a matter of discretion in the interest of justice, and the matter remanded for a new trial.

Defendants are former partners and brokers of Duke & Company, an investment banking and retail brokerage firm that went out of business in 1998. Defendants and more than 20 other former Duke employees were charged with perpetrating various crimes in the course of Duke's business. Among other things, the People contend that Duke was a "boiler room" operation, which used fraudulent and manipulative devices to artificially inflate the prices of stocks underwritten by the firm. After defendants' first trial ended in a mistrial, defendants were convicted at their second trial of violations of General Business Law §.352-c (5) and (6).

Although the verdict was supported by legally sufficient evidence, we find reversal warranted by the trial court's decision, in October 2001, to preclude the introduction of certain defense exhibits at trial. This sanction was imposed on defendants on the ground that they delivered such exhibits to the prosecutors 26 minutes after a court-imposed deadline had passed, on a day that the trial was not in session. It appears that the 26-minute delay was caused in part by the difficult traffic conditions that prevailed in Lower Manhattan at the time due to the terrorist attack on the World Trade Center less than a month before. The exhibits in question, which were based on the Duke trading data that formed much of the basis of the prosecution, bore directly on the question of guilt or innocence. Specifically, the exhibits were intended to demonstrate that defendants' alleg-

edly fraudulent trading activity had actually resulted in profits to defendants' clients. The exhibits also sought to show that defendants in particular, and the Duke firm as a whole, had not systematically refused to execute clients' orders to sell house stocks unless there were corresponding buy orders for the same stocks. Given the materiality of these matters, and the voluminous and technical nature of the proof at trial, the prejudice to defendants from the preclusion of the exhibits substantially outweighed any prejudice to the People from the 26-minute delay in their receipt of the material. It is no answer for the People to say that the defense was able, in the absence of the exhibits, to rely on other evidence to make substantially the same points the exhibits were intended to support. In view of the complexity of this case, the brief delay in the delivery of the exhibits does not justify their preclusion. Accordingly, although we recognize that the management of trial proceedings is generally best left to the discretion of the trial court, we find that such discretion was improvidently exercised here.

For the guidance of the trial court, we note that, at the new trial, the court should grant defendants' request for a jury charge stating expressly that it is an element of each offense at issue that the defendant obtain property *as a result* of the alleged wrongdoing, i.e., that there be a causal link between the conduct in violation of the statute and the procurement of property (*see* General Business Law § 352-c [5] [a person is guilty of violating the statute if he or she engages in the proscribed conduct "and *so* obtains property" (emphasis added)]; General Business Law § 352-c [6] [a person is guilty of violating the statute if he or she engages in the proscribed conduct "and *thereby* wrongfully obtains property" (emphasis added)]). Although we recently have held that, in a prosecution under General Business Law § 352-c (6), there is no requirement that the People prove that a victim subjectively relied on the truth of a statement by the defendant (*People v Taylor*, 304 AD2d 434 [2003] [affirming conviction based on fraudulent sale of stock to an undercover investigator], *lv denied* 100 NY2d 566 [2003]), we specifically recognized that the evidence in that case established that the defendant "obtained over $1,000 *as a result of his conduct*" in violation of the statute (304 AD2d at 435 [emphasis added]). Thus, as is true of the crime of scheme to defraud (Penal Law § 190.60 [1]; § 190.65 [1]), while "proof of reliance by a particular victim upon specific misrepresentations [is] not required" (*People v Kaminsky*, 127 Misc 2d 497, 503 [1985]), there still must be proof of a wrongful "course of conduct *by which* . . . property was obtained" (*id.* [emphasis added]).

In view of the foregoing, we need not reach defendants'

remaining claims. Concur—Rosenberger, J.P., Lerner, Friedman and Marlow, JJ.